## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

=================================

COPIA COMMUNICATIONS, LLC,

       **Plaintiff,**

    **v.**

AMRESORTS, L.P., a Pennsylvania
    limited partnership and as successor-
    in-interest to AM Resorts, LLC, and
SEAWIND KEY INVESTMENTS,
    LIMITED, a Jamaican corporation,

       **Defendants.**

=================================

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**Civil Action No. 2:16-cv-05575-MMB**


**REQUEST FOR ORAL ARGUMENT**

### PLAINTIFF COPIA COMMUNICATIONS, LLC'S MEMORANDUM
### IN OPPOSITION TO DEFENDANT AMRESORTS, L.P.'S MOTION TO
### DISMISS FOR FORUM *NON CONVENIENS*, INTERNATIONAL COMITY
### AND PURSUANT TO RULE 12(b)(6) OF FEDERAL RULES OF CIVIL PROCEDURE

## I. INTRODUCTION

    The Plaintiff, Copia Communications, LLC (hereinafter "Copia" or the "Plaintiff"),

respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss Pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure by the Defendant, AMResorts, L.P.

(hereinafter "AM Resorts" or the "Defendant") in the above-captioned action.[1]  By its Motion,

the Defendant seeks to dismiss: Count I (breach of contract); Count II (breach of the covenant of

good faith and fair dealing); Count III (promissory estoppel / detrimental reliance); Count IV

---

[1] The Defendant, Seawind Key Investments, Limited (hereinafter "Seawind") has not joined in on the Motion to Dismiss of Defendant AM Resorts, nor has it filed an Answer or any responsive pleading to the Complaint in the instant action. As set forth herein, the Plaintiff contends that the failure of Defendant Seawind to defend against the instant action creates a substantial question as to the forum *non conveniens* and international comity arguments, as argued by Defendant AM Resorts.

1

(unjust enrichment); Count V (fraud and deceit); Count VI (negligent misrepresentation); Count VII (accounting); and Count VIII [sic] (civil conspiracy).

As detailed below, Copia respectfully asserts that the Motion to Dismiss of Defendant AM Resorts has no merit and should be denied in its entirety. In the alternative, Copia respectfully requests that it be granted an opportunity to file a Second Amended Complaint, and correct any perceived deficiencies. The Plaintiff respectfully requests oral argument and a hearing on the Defendant's Motion to Dismiss.

## II. <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party has a right to dismissal to the causes of action if the complaining party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court is generally required to accept the allegations of a plaintiff's complaint as true, and any inferences that may be drawn therefrom are to be in favor of the plaintiff. *See* <u>Nader v. Citron</u>, 372 Mass. 96, 98 (1977). Motions to dismiss are permissible where a party has failed to provide anything more than bald assertions that a cause of action exists. *See generally*, 5A C.A. Wright & Miller, <u>Federal Practice and Procedure</u>, §§ 1356-1357 (1992). A motion to dismiss does not require detailed factual allegation, rather, a plaintiff's obligation is to provide the "grounds" of his "entitlement to relief," which requires more than simple labels, conclusions, and a recitation of the elements of a cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). As the U.S. Supreme Court has held, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true," even if the facts are doubtful.  Id.  Furthermore, a well-pleaded complaint may proceed, even though it may appear that recovery is remote and unlikely.  Id. at 556.[2]

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) generally requires identification of false statements and the "who, what, where and when".  *See* N. American Catholic Educational Programming Found., Inc. v. Cardinale, 567 F.3d. 8, 13 (1st Cir. 2009).   Courts have held insufficient a complaint's general allegation of the defendant's knowledge of material falsity, "unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J).  The Defendant respectfully submits that its Third-

---

[2] In general, a Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted only if it appears, *beyond doubt*, that a plaintiff can prove *no facts* in support of its claim that entitle it to relief. Paredes v. Princess Cruises, Inc., 1 F. Supp. 87, 91 (D. Mass. 1998) (Gorton, J.)(emphasis added), citing, Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. Paredes, 1 F. Supp. at 91, citing, Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). The court is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See id. and Knight v. Mills, 836 F.2d 659, 664 (1st Cir. 1987); Currie v. Cayman Resources Corp., 595 F. Supp. 1364, 1370 (N.D. Ga. 1984), aff'd in part and rev'd in part, 835 F.2d 780 (11th Cir. 1988) (In considering a motion to dismiss under 12(b)(6), "the allegations of the complaint and all reasonable inferences from the facts alleged must be taken as true"). The standard for deciding motions to dismiss under Rule 12(b)(6) is well-established:  "[A pleading] should not be dismissed for failure to state a claim unless it appears beyond doubt that the Claimant can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bracewell v. Nicholson Air. Serv., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see also Quality Foods v. Latin Amer. Agribusiness Dev., 711 F.2d 989, 995 (11th Cir. 1983). This comports with the fundamental purpose of pleadings to provide adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

As a result, in the federal courts, a pleading is typically liberally construed in favor of the complaining party. See, e.g., Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).  Additionally, a complaining party is usually granted the benefit of the necessary inferences which can be derived from all of the facts and from the pleadings. Id.; see also Pearman v. Norfolk & Western Railway Co., 939 F.2d 521, 523 (7th Cir. 1991); St Joseph's Hospital v. Hospital Corp. of America, 795 F.2d 948 (11th Cir. 1986).  If an allegation is capable of multiple inferences, the courts usually will construe such allegation in a light most favorable to the pleading party. Mayer v. Mylod, supra, 988 F.2d 638.

Party Complaint comports with the pleading requirements of the Federal Rules of Civil Procedure and contends that there is no merit to the Third-Party Defendants' Motion to Dismiss.

## II. PRELIMINARY STATEMENT AS TO THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

As set forth in the First Amended Complaint, the Plaintiff, Copia Communications LLC, is a limited liability company, duly organized in the Commonwealth of Massachusetts, and with a principal place of business located in Boston, Massachusetts. (First Amended Complaint, ¶ 4.) At time of the execution of the contract at issue in this case, Copia had its business location at 23 East Road, Westminster, Massachusetts.  (First Amended Complaint, **Exhibit E**, at p.11). As alleged, Defendant, AMResorts, L.P., is a limited partnership, organized in the Commonwealth of Pennsylvania, and is the successor-in-interest to AM Resorts, LLC, a Pennsylvania limited liability company.  (First Amended Complaint, ¶ 5.)  AM Resorts has a principal place of business at address 7 Campus Boulevard, Newtown Square, Pennsylvania 19073. (*Id*.) As set forth in the pleadings, the Defendant owns and manages the "Secrets Resorts" hotels, including those at Montego Bay, Jamaica.[3]

### A)  **Copia Negotiates the Seawind Contract with Defendant AM Resorts**

As alleged in the First Amended Complaint, at a meeting held on or about April 21, 2009, Darryl Wehmeyer, Manager and sole Member of Copia, negotiated with Defendant AM Resorts as to the various terms and conditions of a business arrangement and contract, including, but not limited to, the business center in the Secrets Resorts, the charges for Wi-Fi to Secrets Resorts' guests, a stream of revenue payments to Copia, marketing and advertising, and terms as

---

[3] The Defendant, Seawind Key Investments, Limited is a corporation, duly organized in Jamaica, and with a principal place of business at 10 A Chelsea Avenue, Kingston, Jamaica, W.I. As the First Amended Complaint details, Seawind Key Investments Limited operates and owns two (2) luxury resort hotels: a) Secrets St. James Montego Bay, and b) Secrets Wild Orchid Montego Bay, both of which have a principal place of business at Lot 509A, Freeport, Montego Bay, Jamaica.  (First Amended Complaint, ¶ 6.)

to any potential termination of the contract. (First Amended Complaint, ¶ 12.). Mr. Wehmeyer primarily negotiated with Manuel Garcia, and with Pedro Morell and Manuel Carbajo, both of whom held themselves out as employees of Defendant AM Resorts and had authority to negotiate the terms and conditions. (First Amended Complaint, Exhibits A, B, C. & D). According to the Plaintiff's pleadings, Javier Estelrich of AM Resorts was cc'ed on certain email communications as to the negotiations.  (See First Amended Complaint, Exhibit B).  Copia has also alleged that Mr. Cabajo and Mr. Esterich both had email addresses which were "@amresorts.com."  (See First Amended Complaint, Exhibit B). There can be little dispute that the Plaintiff has properly alleged that Defendant AM Resorts had substantial authority over the drafting of the contract between the Parties. (First Amended Complaint, Exhibits A, B, C & D).

   **B)**   **Defendant AM Resorts Approves The Contract With Plaintiff Copia**

On or about June 29, 2009, according to the First Amended Complaint, the Plaintiff entered into the final integrated contract (hereinafter the "Contract") for Internet and telecommunications services and equipment. (First Amended Complaint, ¶ 17 & Exhibit D). There can be no dispute to the allegation that the Contract set forth the agreement between the Parties by which Copia had responsibility to design, provide and maintain Internet services (hereinafter the "Solutions") for the Defendants at the Secrets Resorts. (First Amended Complaint, ¶ 18 & Exhibit D).

As alleged, Copia entered into the Internet and Business Centre Solutions and Service Agreement, as of June 29, 2009.  (First Amended Complaint, Exhibit E).  In the pleadings, the Plaintiff alleges that the Contract reflects an address for Copia in the United States – NOT in Jamaica.   Additionally, Copia has asserted that the Contract provides for payment by the Defendants in U.S. Dollars. (First Amended Complaint, Exhibit E (Contract, ¶¶ 6.3 & 6.5)).

Thus, according to the First Amended Complaint, Even if the guest of the Secrets Resorts paid in a currency other than U.S. Dollars, the Defendants were obligated to pay Copia in U.S. Dollars. (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶¶ 6.5 & 6.6)).

As alleged, notice of any information, as required by the Agreement, was to be given to the Plaintiff in Massachusetts.  (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶¶ 18.1, 18.2 & 18.3)). Service of any proceedings were to be served upon the statutory agent at its registered office – and for the Plaintiff, was in the United States. (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶ 18.3)).  While the courts of Jamaica had "*non-exclusive jurisdiction*", nothing in the Contract precluded the jurisdiction of the federal courts in the United States, or in the District of Massachusetts. (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶ 17.0)). Indeed, by its severability clause, the Contract specifically anticipated that if any provisions of the Contract was "held by any court or other competent authority to be void or unenforceable", the remainder of the Contract would be considered valid. (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶ 16.5)).  Clearly, the federal courts – including the Eastern District of Pennsylvania which is the home of Defendant AM Resorts – were anticipated to have jurisdiction to rule on the enforceability of certain provisions of the Contract.

There can be no dispute that although the Contract refers to Jamaican law for the interpretation of the contract, Jamaica is NOT the sole of legal authority for the determination of the contract.  For example, in Section 9.0, the "CUSTOMER further agree[d] to comply with *all applicable US statutes, rules and regulations*."  (First Amended Complaint, <u>Exhibit E</u> (Contract, ¶ 9.0, at p.6 (emphasis added)). Additionally, the Contract contained specific provisions for the export of the equipment by Plaintiff Copia from the United States to the Defendants in Jamaica. <u>Id.</u>  It is not in dispute that both the Plaintiff and the Defendants agreed that any Products and

6

technical information under the Contract were "*subject to the United States export laws and regulations* and any use or transfer of such Products and technical information must [have been] authorized under those [U.S.] *regulations*." Id. (emphasis added). The Defendants agreed to comply with U.S. export regulations, and execute such necessary export documents as may be required by U.S. law. Id.

By Section 9.0, the Contract contemplated that the Plaintiff would be exporting its equipment and technical information from the United States to Jamaica[4], and compliance was required under federal law. Id. As alleged in the First Amended Complaint, it is entirely appropriate that a U.S. District Court, sitting in Philadelphia, Pennsylvania (the District of the he4adquarters and the principal place of business of Defendant AM Resorts), maintains the pending action, as filed.

**C)** **Plaintiff Copia Performs the Contract for Seawind and AM Resorts**

The Plaintiff alleges that Copia performed all of its obligations under the Contract in a workmanlike manner. (First Amended Complaint, ¶ 28, at p.8). There is no dispute, as alleged, that on or about August 25, 2009, the Defendant AM Resorts paid the Plaintiff under the Contract. (First Amended Complaint, ¶ 25 (Exhibit G)). As set forth in the First Amended Complaint, when Copia inquired of Defendant AM Resorts as to the purpose of the payment, the Plaintiff was informed that it was "the advance payment as per contract." (First Amended Complaint, ¶ 25 (Exhibit G)).

As alleged, the Plaintiff shipped hundreds of thousands of (U.S.) Dollars of equipment, subject to U.S. export controls, from the United States to Jamaica. (First Amended Complaint, (Exhibit L & M)). There is no dispute that, for over four (4) years, the Defendants made

---

[4] Presumably, the Defendants do not argue that Copia was exporting from Jamaica, to the Secrets Resorts at another location in Jamaica, and thereby was subject to the U.S. export statutes and regulations.

payments in the hundreds of thousands of Dollars (U.S.) in payments to the Plaintiff in the United States. (First Amended Complaint, <u>Exhibit E</u> (Contract), ¶¶ 6.3, 6.5 & 6.6). There is no allegation – nor evidence – that the Defendants made any payment in Jamaican currency – nor could they make payment in such currency. (First Amended Complaint, <u>Exhibit E</u> (Contract), ¶ 6.6).

Furthermore, as the First Amended Complaint alleges, a mere two (2) months before the Contract was illegally terminated, the Defendants caused the Plaintiff to install additional equipment worth $266,000.00. (<u>See</u> First Amended Complaint, ¶ 37, at p.10, & <u>Exhibits L &</u> <u>M</u>). The pleadings allege that the equipment was shipped from the United States, was subject to U.S. export controls, under United States statutes, laws and regulations, and payment is due to Copia in U.S. Dollars in the United States. (<u>See</u> First Amended Complaint, <u>Exhibits L & M</u>).

**D)**     <u>**Defendants Unlawfully Terminate and Breach the Contract in Spring 2014**</u>

As alleged in the First Amended Complaint, on or about April 28, 2014, Emilio Huhn, an employee of AM Resorts, sent an email to the Plaintiff in the United States, that stating that the Defendants had decided to terminate the Contract with Copia as of May 1, 2014. (<u>See</u> First Amended Complaint, ¶ 29, at p.9, & <u>Exhibits J</u> & <u>K</u>). There is no dispute that under the pleadings, notice was sent to the Plaintiff in the United States in accordance with Sections 18.1, 18.2 and 18.3 of Contract. (First Amended Complaint, <u>Exhibit E</u> (Contract), ¶¶ 18.1, 18.2 & 18.3). As set forth below, it is entirely appropriate that the Plaintiff litigate the breach and unlawful termination of the Contract in the federal court in the United States

**E)**     <u>**Defendant AM Resorts As An "Alter Ego" of Defendant Seawind**</u>

Defendant AM Resorts has touted its "Family of Companies" in certain publications, including its documentation by the same title. <u>See</u> "Family of Companies", at p.1, attached

hereto, and restated and incorporated by reference herein as <u>Exhibit I</u> (hereinafter "Family of Companies Document" or as "<u>Exhibit I</u>").  The Defendant's "Family of Companies" includes, *inter alia*, the Secrets Resorts.   <u>See</u> <u>Exhibit I</u>, at pp.1 & 6-8. With the Secrets Resorts logo prominently positioned below, the Defendant states that it "opened in 2001 with a mission to launch a higher luxury product that provides outstanding guest experiences specializing in the leisure market." <u>See</u> <u>Exhibit I</u>, at p.6. The Dreams Resorts and Spa is also among Defendant AM Resorts' "Family of Companies." <u>See</u> <u>Exhibit I</u>, at pp.6-8.

In its "Family of Companies Document" and as part of the Apple Leisure Group (<u>See</u> <u>Exhibit I</u>, at p.2), the Defendant cites, *inter alia*, the following data:  a) "Over 1,100 Employees in 4 Office Locations;" b) "Largest tour operator worldwide to Mexico & the Caribbean;" c) "Over 1 million passengers per year globally;" d) "Strongest Travel Agent Network in the US;" and e) "Largest Sales Structure in [the] Industry." <u>See</u> <u>Exhibit I</u>, at p.3. Indeed, Defendants AM Resorts and Seawind conduct joint advertising, including but not limited to, online advertising the "Secrets Resorts" to tourists and travel agents, which include potential travelers from the Commonwealth of Massachusetts.  <u>See</u> Various Web Pages of Secrets Resorts and AM Resorts, attached hereto, and restated and incorporated by reference herein as <u>Exhibit II</u> (hereinafter the "Web Pages" or as "<u>Exhibit II</u>").  Defendant AM Resorts has a Regional Director of Groups Northeast – currently Suzanne Lo Guidice – for group sales for customers in the Northeast.  <u>See</u> <u>Exhibit II</u>, at pp.4-5. The Regional Director "is actively involved in attending MPI, SITE, ASAE, and COPE Events in the Northeast" – "making sure that all her customers are met with exceptional service." <u>Id</u>. at p.5.

Contrary to its arguments as to jurisdiction and forum *non conveniens*, Defendant AM Resorts[5] is no stranger to litigation in the federal courts arising from disputes in the Secrets Resorts in Jamaica.  In recent years, AM Resorts defended another litigation in the Eastern District of Pennsylvania, entitled *Douglas Brooks v. AM Resorts, LLC*, Civil Action No. 2:11-cv-00995-AB (E.D. Pa.)(hereinafter the "Brooks Litigation"). A copy of the Docket attached hereto, and restated and incorporated by reference herein as Exhibit III (hereinafter the "Brooks Litigation Docket" or as "Exhibit III").  The Plaintiff is the Brooks Litigation was a resident of Jamaica[6] and brought an action in the U.S. District Court, which did not dismiss the case on forum *non conveniens* or based upon international comity.

**E)**    **AM Resorts' Employees Have Dual Roles in Alter Ego Seawind**

**1)**    **Pedro Morell** - As set forth in the pleadings, Pedro Morell held himself out as an employee of Defendant AM Resorts in negotiations with Copia. (See First Amended Complaint, Exhibits J & K). Moreover, Morell had an email address for a Secrets property of Defendant AM Resorts, "@dreamspalmbeachpuntacana.com." (See First Amended Complaint, Exhibits A, B, C. & D).  In fact, through LinkedIn, Pedro Morell has recently held himself out to the world as having been an employee of AM Resorts – with the title "Director Financiero Palm Beach Punta Cana" -- during the relevant period of time of June 2008 through November 2010.  (See Pedro Morell LinkedIn Web Pages, at p.1, attached hereto, and restated and incorporated by reference herein as Exhibit IV (hereinafter the "Morell LinkedIn Pages" or as "Exhibit IV")).

---

[5] As indicated in the First Amended Complaint, AM Resorts, L.P., a Pennsylvania limited liability partnership, is the successor – in - interest of AM Resorts, LLC, a Pennsylvania limited liability company. (See First Amended Complaint, ¶ 5).

[6] The Brooks Complaint indicates that the Plaintiff resided at Unit 1-D DeLisser Ave, Kingston 8, Jamaica.

2)      **Manuel Carbajo - A**nother key player, Manuel Carbajo, has also held himself

out as an employee of Defendant AM Resorts in negotiations with Copia and had an email

address for "@amresorts.com."  (See First Amended Complaint, Exhibits A, B, C. & D).  In fact,

in his position as CEO of Grupo Rescue, Manuel Carbajo has recently held himself out to the

world as having been an employee of AM Resorts, with the title "Regional Director for

Caribbean Administration of AM Resorts." See Manuel Carbajo Biography, Grupo Rescue Web

Pages, at p.2, attached hereto, and restated and incorporated by reference herein as Exhibit V

(hereinafter the "Carbajo Grupo Web Pages" or as "Exhibit V"). In his online biography, Mr.

Carbajo specifically refers to his prior employment by Philadelphia-based AM Resorts, and

states as follows:

> "Before joining Grupo Rescue, he built a successful history in the hotel industry.
> Manuel Carbajo was Regional Director for the Caribbean Administration of AM
> Resorts, luxury managing hotel company throughout the Caribbean *based in
> Philadelphia, USA which currently has 27 hotels spread throughout the
> Caribbean*."

See Exhibit V, at p.2 (emphasis added).

3)      **Javier Estelrich** – Another important AM Resorts player, Javier Estelrich, was

cc'ed on the key negotiation email, as sent by Pedro Morell and received by Mr. Wehmeyer of

Copia and Mr. Carbajo. (See First Amended Complaint, Exhibit B). Mr. Estelrich also had an

email address for "@amresorts.com." (See First Amended Complaint, Exhibit B). In fact,

through LinkedIn, Javier Estelrich  has recently held himself out to the world as having been an

employee of AM Resorts – with the title "Director Regional Republica Dominica y Caribe" --

during the relevant period of time of June 2008 through December 2010.  See Javier Estelrich

Planas LinkedIn Web Pages, at p.1, attached hereto, and restated and incorporated by reference

herein as Exhibit VI (hereinafter the "Estelrich LinkedIn Pages" or as "Exhibit VI").

**4)**   **Emilio Huhn** -- Emilio Huhn has also been identified by the Plaintiff as a "key decision-maker" of Defendants AM Resorts and Seawind.  (First Amended Complaint, <u>Exhibits J & K</u>).  Mr. Huhn also had an email address for "@amresorts.com."  (First Amended Complaint, <u>Exhibits J & K</u>). Through LinkedIn, Emilio Huhn  still currently holds himself out to the world as having been an employee of AM Resorts during the relevant time period – with the title of "Director of Luxury Brands." <u>See</u> Emilio Huhn LinkedIn Web Pages, at p.1, attached hereto, and restated and incorporated by reference herein as <u>Exhibit VII</u> (hereinafter the "Huhn LinkedIn Pages" or as "<u>Exhibit VII</u>").   As alleged in the First Amended Complaint, Huhn was an employee of Defendant AM Resorts at the time of the improper termination, and sent such termination notice on letterhead of Defendant Seawind, from an email address of "@secretresorts.com."  (<u>See</u> <u>Exhibit VII</u>, at p.1 ("*Director of Luxury Brands, AM Resorts; 2009 – Present*") (emphasis added), <u>and</u> First Amended Complaint, <u>Exhibits J & K</u>).

In sum, Plaintiff Copia contends that, in this pleadings stage of the litigation and without the benefit of discovery, this action properly should be litigated in the United States, and in the District in which Defendant AM Resorts has its headquarters and principal place of business. Defendant AM Resorts was a control person and/or entity for Seawind, as its alter ego, and was managing and operating the Secrets Resorts and, as the decision-maker for the Defendants, worked directly with Copia at every stage of the negotiations and implementation of the Contract. As a result, Defendant AM Resorts was a party to and/or third-party beneficiary of the Contract, or is a separate tort-feasor. (*Id*.).

### III. ARGUMENT

**A.     This Court Should Not Dismiss the First Amended**
**Complaint Based Upon the Doctrine of Forum *Non Conveniens***

**1)     The Forum is Located Fourteen (14) Miles From Defendant AM Resorts**

The Plaintiff contends that it is utterly disingenuous for the Defendant, AM Resorts, to argue that the federal court in Philadelphia, Pennsylvania is an inconvenient forum.  Indeed, the Defendant has strained credulity to assert that this action should be litigated in Jamaica – instead of its own backyard.  This Court should dismiss the entire line of argument as to forum *non conveniens*, as asserted by AM Resorts, as utterly meritless.

By this Opposition, the Plaintiff, by and through counsel, provides the Court with a little perspective on this argument – courtesy distance calculators on the Internet.  First, the Plaintiff has calculated the straight line distance between the headquarters of Defendant AM Resorts, at 7 Campus Boulevard, Newtown Square, Pennsylvania, and the U.S. District Court for the Eastern District of Pennsylvania, located at 601 Market Street, Philadelphia, Pennsylvania.  (See "*As the Crow Flies Distance Calculator*," between 7 Campus Boulevard, Newtown Square, Pennsylvania, and 601 Market Street, Philadelphia, Pennsylvania, as attached hereto, and restated and incorporated by reference herein as Exhibit VIII (hereinafter "Exhibit VIII")). The distance – *fourteen (14) miles*! Not very inconvenient for the Defendant.

Next, the Plaintiff has calculated the driving distance between the headquarters of Defendant AM Resorts, at 7 Campus Boulevard, Newtown Square, Pennsylvania, and the U.S. District Court for the Eastern District of Pennsylvania, located at 601 Market Street, Philadelphia, Pennsylvania.  (See "*Google Maps Calculator,*" between 7 Campus Boulevard, Newtown Square, Pennsylvania, and 601 Market Street, Philadelphia, Pennsylvania, as attached hereto, and restated and incorporated by reference herein as Exhibit IX (hereinafter "Exhibit

IX")). The distance and driving time – _twenty-six and 9/10 (26.9) miles and thirty-five (35)_ _minutes of driving_! Still, pretty convenient for Defendant AM Resorts.

Third, the Plaintiff has calculated the straight line distance between the headquarters of Plaintiff Copia, at 711 Atlantic Avenue, Boston, Massachusetts, and the U.S. District Court for the Eastern District of Pennsylvania, located at 601 Market Street, Philadelphia, Pennsylvania. (See "_As the Crow Flies Distance Calculator_," between 711 Atlantic Avenue, Boston, Massachusetts, and 601 Market Street, Philadelphia, Pennsylvania, as attached hereto, and restated and incorporated by reference herein as Exhibit X (hereinafter "Exhibit X")). The distance – _two hundred – seventy (270) miles_. Not too close, but the Plaintiff chose the forum and certainly agrees to litigate in Philadelphia, Pennsylvania.

Finally, the Plaintiff has calculated the straight line distance between the headquarters of Plaintiff Copia, at 711 Atlantic Avenue, Boston, Massachusetts, and Jamaica,[7] in the Caribbean. (See "_As the Crow Flies Distance Calculator_," between 711 Atlantic Avenue, Boston, Massachusetts, and Jamaica, as attached hereto, and restated and incorporated by reference herein as Exhibit XI (hereinafter "Exhibit XI")). The straight – line distance – _One Thousand –_ _Five Hundred – Sixteen (1,516) miles_. The Plaintiff submits that the Defendant has little credibility in arguing that the forum which is fourteen (14) miles from its headquarters in Pennsylvania is "less convenient" than a forum which is over 1,500 miles away for the Plaintiff.

The Plaintiff respectfully submits that Defendant AM Resorts argument of forum _non_ _conveniens_ is meritless and should be denied by this Court.

---

[7] According to its Jamaican counsel, the Plaintiff understand that the distance to the Jamaican court is comparable

**2)**     **The Court Should Not Dismiss Based Upon Forum *Non Conveniens***

The Plaintiff contends that this Court should not dismiss this case under the doctrine of forum *non conveniens* as there is not another court with jurisdiction to hear the present case, and litigating the present case would not unduly burden AMResorts in a manner, "out of all proportion to plaintiff's convenience." Kisano Trade & Invest Ltd. v. Lemester, 737 F. 3d 869, 873 (3rd Cir. 2013). In Kisano, the Third Circuit held that a plaintiff's choice of forum should rarely be disturbed, and that the district court should exercise its discretion to dismiss the case only when, "an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would `establish ... oppressiveness and vexation to a defendant... out of all proportion to plaintiff's convenience,' or when the `chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," Kisano, supra, 737 F.3d at 873.

In considering a motion to dismiss for forum *non conveniens*, the federal courts have outlined four factors to, "help guide a district court's exercise of discretion: (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum." Kisano, supra, 737 F.3d at 873(quoting Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir.2008)). "It is settled that the defendant bears the burden of persuasion as to all elements of the forum *non conveniens* analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988).

The Plaintiff asserts that Defendant AMResorts has failed to meet the burden imposed by this Court and as such, its Motion to Dismiss on the grounds of forum *non conveniens* should be denied, in its entirety.

### A)   Plaintiff's Choice of Forum is Given A High Level of Deference

This Court has held that, "[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." <u>Alliance Industries Limited v. A-1 Specialized Services & Supplies, Inc.,</u> No. 13-2510 (E.D. Pa. 2014) (<u>quoting</u> <u>In re Air Crash Disaster Near New Orleans, La. on July 9, 1982</u>, 821 F.2d 1147, 1164 n.26 (5th Cir. 1987).  In <u>All. Indus.</u>, the plaintiff Alliance Industries Limited was incorporated under the laws of Gibraltar and had a principal place of business in the United Arab Emirates. The co-plaintiff, Alliance Industries FZC was incorporated under the laws of the Sharjah Airport International Free Zone of the United Arab Emirates, which was also its principal place of business. The Defendant, on the other hand, was incorporated in Pennsylvania and also had its principal place of business in the Commonwealth.  As the plaintiffs were foreign, the district court afforded them a lesser degree of deference, **but** the convenience of the location to the defendants caused the federal court to, "accord some deference to Plaintiffs' choice of forum." <u>All. Indus.</u>, <u>supra</u>, No. 13-2510 (2014).

In the present case, **both** the Plaintiff and the AM Resorts are citizens of states on the Eastern Seaboard of the United States.  As such, the Plaintiff's choice of forum should be given more weight than in <u>All. Indus.</u>  The Defendant can hardly argue that it is less convenient for the Parties than the alternate forum of Jamaica, as compared to the Eastern District of Pennsylvania, which is fourteen (14) miles from its doorstep.

**B)      The Jamaican Courts are Not an Adequate Alternative Forum.**

The Plaintiff contends that Jamaica is not an adequate alternative forum to the federal court in the Eastern District of Pennsylvania. As this Court has explained, the requirement of an adequate alternative forum is generally satisfied, "when the defendant is 'amenable to process' in the other jurisdiction." Lacey v. Cessna Aircraft Co., 932 F.2d 170 (3d Cir. 1991). (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). However, this Court went on to explain that, "[o]ccasionally, however, if the alternative forum offers a clearly unsatisfactory remedy, it will nonetheless be inadequate. The latter situation arises, for instance, when the subject matter of the suit is not cognizable in the alternative forum." Lacey, supra, 932 F.2d at 180.

Although the Defendant has scoured the various legal websites and cited a few cases in which Jamaica was found to be an adequate alternative forum, such cases are distinguishable and the facts are not similar to the present case. The Plaintiff contends that this Court should determine that these cases are unpersuasive.  For example, in Muraco v Sandals Resorts International, No. 14-CV-4896 (MKB) (E.D.N.Y. 2015), the plaintiff was the only resident of the United States in that litigation.  Of the opposing parties, one defendant was a resident of Jamaica, while the other two defendants were residents of St. Lucia.  In Muraco, the plaintiff did not argue that St. Lucia was an adequate alternative forum, only that the deference owed to her choice of forum outweighed the alternative forum.  This is not the argument being made presently.  On the contrary, the Plaintiff is seeking to fully flesh out an argument that in the instant case, Jamaica is NOT an adequate alternative forum.

Furthermore, in Seales v. Panamanian Aviation Company Limited, No. 09-1173-cv (2d Cir. 2009), the plaintiff was only able to assert that the district court abused its discretion when

deciding that Jamaica was an adequate alternative forum. The <u>Seales</u> plaintiff did not develop his argument that Jamaica was not an adequate alternative forum, and so the Court of Appeals did not fully address the issue. As outlined above, this is not similar to the present case.

The Plaintiff would ask the court to consider the factor listed below and conclude that for the purposes of the instant action, the Defendant has failed to meet its burden of demonstrating that Jamaica is an adequate alternative forum, and it should find to the contrary.

### C)   Dismissal of this Action Would Be a Violation of <u>Plaintiff's Seventh Amendment Right to a Jury Trial</u>

The Seventh Amendment to the United States Constitution has provided that, **"**In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…" U.S. Const. am. 7.   The U.S. Supreme Court has held that where claims are of a legal and not equitable nature, the case should proceed to a jury as the finder of fact. <u>Lytle v. Household Mfg., Inc.,</u> 494 U.S. 545, 110 S. Ct. 1331, 108 L. Ed. 2d 504 (1990).   In the current Jamaican litigation, the Jamaican court is only considering equitable remedies and will not afford the Plaintiff with a trial by jury.   Given that the legal claims and the equitable are joined in the present action, the Plaintiff respectfully submits that this Honorable Court should hold, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." <u>Lytle</u>, <u>supra</u>, S. Ct. 1331, 108 L. Ed. 2d 550. (<u>quoting</u>  <u>Curtis v. Loether</u>, 415 U. S. 189, 196, n. 11 (1974)).

The Jamaican proceeding will **not** be tried before a jury.   Even if there were legal causes of action in the Jamaican case, these would not be tried before a jury.   According to the official

website for the Jamaican Supreme Court[8], the only offenses which are tried before a jury are serious criminal offenses.

From the Plaintiff's review of the case law, the Third Circuit Court of Appeals has not yet expressed and opinion on a comparable case.  The Third Circuit briefly touched upon the issue in Doe v. The Ritz Carlton Hotel Company, LLC, No. 15-1261 (3d Cir. 2016).  The Doe Court noted, however, that the appellant failed to fully develop the argument before the district court and so appellate consideration of the issue was deemed waived.  The Third Circuit also noted that in the Cayman Islands, a party may make an application or request to the Cayman court for a jury trial.  As stated above, according the Plaintiff's understanding, a jury trial is **not** an option in the current Jamaican proceeding.

### D)  Plaintiff Cannot Compel Joinder of AM Resorts in Jamaica

The Plaintiff also contends that the Defendant has conveniently skirted a key issue with respect to the present Jamaican litigation – namely, that Defendant AM Resorts is NOT a party to that litigation.  Additionally, the Jamaican proceeding is scheduled to proceed to a bench trial on or about April 17, 2017, and there is little likelihood that AM Resorts can be joined at this stage.  Moreover, the Plaintiff understand that joinder of Defendant AM Resorts in the Jamaican litigation cannot be compelled and is highly unlikely to occur.

Thus, the Defendant is proposing a solution to, in essence, preclude any litigation on the merits against Defendants AM Resorts.  Dismissal of this action in favor of the Jamaican case would have the effect of denying the Plaintiff a legal remedy on its claims.

---

[8] http://supremecourt.gov.jm/sites/default/files/pdf_documents/Jury%20Duty%20Brochure.pdf

### E)     Plaintiff Will Be Unable to Engage in U.S. Discovery

Similarly, dismissal of this action in deference to the Jamaican litigation will deny the Plaintiff the opportunity and the right to obtain discovery of Defendant AM Resorts and third-parties, if necessary, in the United States.  The right to discovery is a fundamental  aspect of the adversary process in the federal courts, and the Plaintiff will be unable to serve Interrogatories, Request Production of Documents, request Admissions, or seek to have an inspection, such as of electronic media and information. The Plaintiff respectfully submits that it will effectively be denied due process if it is unable to obtain discovery, as required to prove its case.

### 3)     Private Interest Factors Do Not Weigh In Favor of Dismissal.

As the Defendant points out, courts consider several public interest factors when analyzing a claim of forum *non conveniens*: "private interests include such things as ease of access to sources of proof, ability to compel witness attendance, and other potential obstacles to a cost-effective and expeditious trial." Kisano Trade & Invest Ltd. v. Lemster, 737 F.3d 869 (3d Cir. 2013). The Plaintiff asserts, however, that a balancing of these issues does not weigh in Defendant AM Resort's favor.

In Kisano, as cited by the Defendant, the plaintiff was not a citizen of the United States. The citizenship and residency of a party was something that was taken into consideration by the federal court.  The test for forum *non conveniens* is one in which the courts,

> "do not conduct their analysis in a vacuum. They conduct their balancing in light of the degree of deference the plaintiffs choice of forum deserves. The court's deference for the plaintiff plays a significant role in defining the weight of the defendant's burden in satisfying the second prong."

Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183 at 416; Auxer v. Alcoa, Inc., No. 10-2131 (3d Cir. 2011) (where two hundred-forty three (243) plaintiffs and the defendant were located in Western Australia and only one (1) party-plaintiff was located in the United States.)

In this case, the Plaintiff in this *is* a citizen of the United States and should receive an elevated level of deference placed on its choice of forum as compared to a foreign party. Further, the Defendant, as the moving party, is *also* a citizen of the United States, and located a mere fourteen (14) miles from Eastern District. With the emphasis on convenience, it is clear that this federal court in the Eastern District is the more convenient forum as compared to a courho0use which is over 1,500 miles away.

Both the Plaintiff and the Defendant are citizens of the United States, and it logically follows that most of the witnesses, discovery and evidence will also be located in the United States. While certain evidence may exist outside of the United States, the majority of communication was done remotely via written, telephonic, or electronic communications to Defendant AM Resorts or the Plaintiff in the United States. Depositions of the Planti9ff or the Defendant would occur in the United States and be easily accessible. The Plaintiff is also not aware of any reason that a viewing of relevant premises at the Jamaican resort would even be necessary.

<u>Doe v. Ritz Carlton</u>, the court held that the plaintiff's regular travel to the Cayman Islands was, under the private interest factors, an indication against the argument of financial burden on that party. However the facts in that case were not nearly the same as here. In that case, the court placed emphasis on the fact that the plaintiffs flew to the Cayman Islands on a private jet, and returned two weeks later for a relevant criminal proceeding. In fact, the court noted that the plaintiffs never even made the contention that their appearance for a trial in the Cayman Islands would be a financial burden. Plaintiff Copia asserts that it would a substantial financial burden for it to appear and litigate in Jamaica.

The Court has listed some of the public interest factors to be examined as: "administrative challenges and congesting courts, imposing jury duty on those in a community with no relation to the action, interest in having local controversies decided at home, and familiarity with the governing law." All. Indus., No. 13-2510 (2014).  As with all other aspects of a motion for dismissal under forum *non conveniens*, no one aspect is to be examined alone, but rather as a part of the balancing test as a whole.  The Plaintiff believes that the public interest factors do not tip the scale in favor of AM Resorts.

In All. Indus., the court further noted that the Supreme Court had held a need to apply foreign law was not controlling, and that the "Third Circuit routinely applies foreign law when forum *non conveniens* is denied."  The court further went on to explain that the Fifth Circuit noted, "foreign law may be more difficult to apply if the relief sought is 'equitable or otherwise unusual relief peculiar to the foreign law,' but it is not particularly complicated when the plaintiff simply seeks a money judgment." Id. (quoting Burt v. Isthmus Dev. Co., 218 F.2d 353, 357 (5th Cir. 1955)).  The law which must be applied here is not a complicated foreign doctrine, but rather very similar principles.

In support of its contention that the public interest factors weigh in favor of dismissal, AMResorts again cites to several cases, besides those listed above, which are distinguishable from the case at bar. Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147 (3d Cir. 2010) (the court places emphasis on the fact the defendant was a resident of France, the alternative forum); see, e.g., Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1228 (3d Cir. 1995).". In Interface Partners Intern. Ltd. v. Hananel, 575 F.3d 97 (1st Cir. 2009, the plaintiff was a Massachusetts corporation, with a principal place of business in Needham.  The defendant was a resident and citizen of Israel.  However, the case had already been litigated for **four years**

in Israel **and** the plaintiff had requested dismissal so that they could refile in Massachusetts.  The plaintiff was not able to explain the basis for this procedure, and the court found it to have been, "operating with a vexatious and oppressive motive." <u>Hananel</u> 575 F.3d 97 at 102.  From a distance of fourteen (14) miles, Defendant AM Resorts in the present case has a more convenient location to the District Court than even the Plaintiff.  The Plaintiff could not reasonably be found to be operating in a vexatious and oppressive manner.

Given that the case had already been litigated for four years in Israel, the <u>Hananel</u> plaintiff was not able to argue that is was not an adequate alternative forum. <u>Id.</u> at 103. The claims which gave rise to the action in this case, were not breach of contract claims.  It involved alleged misappropriation of funds, and destruction of the Plaintiff's property by the Defendant, in order to conceal the alleged activity.  As such, there was much more physical evidence and many more witnesses which were anticipated to be utilized in trial. <u>Id.</u> at 104.  There had also been a lengthy discovery period in which all of the evidence had been produced in Israel.  This is not the case with the Jamaican suit.  This case, while there are some claims which arise from the conduct of individuals, has at its heart, a contractual claim.

In sum, the Plaintiff respectfully submits that this action should not be dismissed on forum *non conveniens*.

### B.    This Court Should Not Dismiss the First Amended <u>Complaint Based Upon the International Comity Grounds</u>

This Court has explained that, "A proceeding is parallel when there is a `substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'" <u>All. Indus</u>. No. 13-2510 (<u>quoting</u> <u>Lexington Ins. Co. v. Forrest,</u> 263 F. Supp. 2d 986, 1002-03 n.13 (E.D. Pa. 2003)). However, the Court found that the cases involved were not parallel, even

though all parties were present in both cases. This is not the case presently.  AM Resorts is NOT a party to the Jamaican action.

In <u>All. Indus.</u>, the court also found that the English case would dispose of only nine out of eleven claims, which was another reason to consider the two cases to **not** be parallel.  This is very similar to the present case.  Even though AM Resorts is not a party to the Jamaican proceeding, there is potential for a judgement in that case to dispose of **some** of the issues present here.  The Plaintiff's claims of promissory estoppel and breach of the implied covenant of good faith and fair dealing are unlikely to be disposed of by the Jamaican action, even if the judgement is against the Plaintiff in this case. While the Jamaican courts may view English case law as persuasive authority, it does not require an "*Erie*-like analysis."  The choice of law on the various causes of action is one which is yet to be determined and need not be addressed. <u>Compare</u> <u>DeFebo v. Andersen Windows, Inc.,</u> 654 F. Supp. 2d 285, 290 (E.D. Pa. 2009). (<u>quoting</u> <u>Penn City Inv. v. Soltech, Inc.,</u>2003 WL 22844210, at *2 (E.D.Pa. 2003), <u>and</u> (<u>quoting</u> <u>Tier1 Innovation, LLC v. Expert Tech. Group, LP</u>, 2007 WL 1377664, at *3 (E.D.Pa. 2007).  For example, the Plaintiff's claim of promissory estoppel is argued in the **alternative** to the contract claims, and by its very nature, requires the absence of a contract.  Therefore, this cause of action, which will not be addressed by the Jamaican court, as outlined above, also does not fall within Pennsylvania's gist of action doctrine.

The Defendant's argument that the economic loss doctrine applies, is equally flawed.  In <u>DeFebo</u>, the Plaintiff did not even argue that the doctrine shouldn't be applied, rather that there was a recognized exception.  Here, the Plaintiff takes the position that not all of its claims are interwoven with the contract claims, and as such, the doctrine should not apply, or that the fraud

claims are not necessarily intertwined with the contract claim as they may stand beside the claim of promissory estoppel.

      **C.**      <u>**The Plaintiff's Tort Claims Are Not Time Barred**</u>

Although the Defendant seeks to avoid litigating in a courthouse which is fourteen 914) miles away, it nevertheless argues that Pennsylvania law applies to certain tort claims. Naturally, the Defendant is citing Pennsylvania law as a convenient means to argue that the Plaintiff's tort claims are time barred.  Plaintiff Copia disputes that argument and rejects the argument that any tort claim s are time barred by a Pennsylvania statute of limitations.

The Plaintiff contends that Massachusetts law governs its tort-type claims, and that such claims are governed by a three (3) year statute of limitations.  Section 2A of Chapter 260 of the Massachusetts General Laws, provides that tort claims under Massachusetts law "shall be commenced only within three years next after the cause of action accrues." M.G.L. c.260 § 2A.

In short, the Plaintiff asserts that there is no time bar to any claim brought by its First Amended Complaint.

      **D.**      <u>**Defendant Seawind Has Been Defaulted in This Court.**</u>

The Plaintiff has filed a Motion for entry of default, pursuant to Rule 55, as Defendant Seawind has failed to defend the instant litigation.  As a result, the Plaintiff anticipates obtaining a Default Judgment against Seawind, which is likely to negatively impact Defendant Seawind's claims in the Jamaican proceeding.  Indeed, the Plaintiff intends to argue that by seeking default judgment against Seawind in the United States, there is little basis for proceeding in the Jamaican courts.   Additionally, Plaintiff Copia is also intending to seek a negative inference against Seawind in the Jamaican proceeding by the entry of a default Judgment in the United States.

In short, the Plaintiff contends that the anticipated Default Judgment against Seawind argues against any further proceedings in the Jamaican litigation, and that remaining claims should proceed in the United States in the U.S,. District Court for the Eastern District of Pennsylvania.

**E.     In the Alternative, this Court has the Power
to Stay the Case for a Limited Amount of Time.**

In the alternative, the Plaintiff submits that this Court may stay the instant action for a limited period of time, such as six (6) months, in order to determine the scope or outcome of the Jamaican proceeding. The U.S. Supreme Court has held that, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

The Third Circuit has adopted a three prong test when considering a motion to stay a case: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay. Richardson v. Verde Energy USA Inc., No. 15-6325 (E.D. Pa. 2016). As alternative to a dismissal, a six (6) month stay of the current case would be a more reasonable course of action.[9]

---

[9] The analysis of the Third Circuit's factors may be considered as follows: a) Judicial Economy - According to the Plaintiff's local counsel in the Jamaican proceeding, the current trial date in the Jamaica is set for April 24-27, with a decision anticipated within the following two (2) months. If either Party were to file an Appeal, that is anticipated to be resolved within 3 (three) months. Thus, a stay of the current proceedings could be in the interest of judicial economy. b) Limited Harm to Parties -  A stay in the current action would result in reduced harm to the Parties. Although the Defendant does not seek any claims of damages, the harm suffered by the Plaintiff would likely be reduced as compared to a dismissal. c) Limited Stay - A six (6) month stay in the current case should be considered reasonable.  The current trial date in the Jamaican Litigation is set for April 24-27, with a decision anticipated within the following two (2) months.   If either Party were to file an Appeal, it is anticipated to be resolved within three (3) months.

**F.      In the Alternative, Plaintiff Requests An Opportunity to Amend
          <u>Its First Amended Complaint and Correct Any Perceived Deficiencies</u>**

Alternatively, Plaintiff Copia requests that it be granted an opportunity to file an Second

Amended Complaint and correct any deficiencies under Rule 15(a).

## V. <u>CONCLUSION</u>

Plaintiff Copia respectfully requests that the Court deny Defendant AM Resorts' Motion

to Dismiss, in its entirety, or alternatively, that it be granted an opportunity to file an amended

pleading and correct any deficiencies, or that a stay be entered for a short period of time. The

Plaintiff respectfully requests oral argument and a hearing on the Motion to Dismiss.

Dated:  April 3, 2017

                                        Respectfully submitted,
                                        PLAINTIFF, Copia Communications, LLC,

                                        By its Attorneys,


                                        */s/ Francesco P. Trapani*
                                        Francesco P. Trapani, Esq.
                                        KREHER & TRAPANI, LLP
                                        1325 Spruce Street
                                        Philadelphia, PA 19107
                                        Telephone: (215) 907-7290
                                        Direct: (215) 907-7289
                                        Facsimile: (215) 907-7287
                                        Email: frank@krehertrapani.com

OF COUNSEL:

Philip M. Giordano, Esq.
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-5005
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

## <u>CERTIFICATE OF SERVICE</u>

I, Francesco P. Trapani, hereby certify that I caused a true and correct copy of Plaintiff Copia Communications, LLC's Opposition to the Defendant AM Resorts Motion to Dismiss, be filed via the court's electronic filing/ECF system and that it is available for downloading and viewing by all counsel of record.  I further certify that I caused a true and correct copy of Copia Communications, LLC's Opposition to the Defendant's Motion to Dismiss was served via first class mail upon Defendant Seawind Key Investments, Limited at Lot 13 Rosemount, Montego Bay, Jamaica.

Dated: April 3, 2017                                          */s/ Francesco P. Trapani, Esq*
                                                             Francesco P. Trapani