IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| COPIA COMMUNICATIONS, LLC, | CIVIL ACTION |
|---|---|
| v. | NO. 16-5575 |
| AMRESORTS, L.P., et al. | |

**MEMORANDUM RE: SEAWIND'S MOTION TO LIFT ENTRY OF DEFAULT AND TO DISMISS AND PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**I.     Introduction**

Plaintiff Copia Communications, LLC ("Plaintiff"), a Massachusetts limited liability company, brings this action against defendants AM Resorts, L.P., a Pennsylvania limited partnership ("AMR"), and Seawind Key Investments Limited, a Jamaican company ("Seawind") for alleged breach of contract and associated torts[1] arising out of an agreement between Plaintiff and Seawind for the provision of internet services by Plaintiff (the "Contract") at two of Seawind's Jamaican hotels, Secrets St. James Montego Bay and Secrets Wild Orchid Montego Bay (the "Resorts").  (See ECF 11, Amended Complaint, "Compl."; see ECF 1, Ex. E, Contract).

Before the Court is Plaintiff's motion for the entry of default judgment[2], filed on April 3, 2017, against Seawind (ECF 18, "Pl. Mot"), and Seawind's response, which also includes a motion to dismiss the Amended Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(2), and for insufficient service of process, pursuant to

---

[1]     In the Amended Complaint, Plaintiff alleges (1) breach of the covenant of good faith and fair dealing, (2) promissory estoppel/detrimental reliance, (3) unjust enrichment, (4) fraud and deceit, (5) negligent misrepresentation, (6) accounting, and (7) civil conspiracy.  (Compl. ¶ 1 (b)-(h)).

[2]     Also pending in this Court is AMR's motion to dismiss the Amended Complaint (1) under the common law doctrine of *forum non conveniens*, (2) on the basis of international comity, and (3) for failure to state a claim pursuant to F.R.C.P. 12(b)(6), (ECF 13), which the parties have fully briefed (see ECF 18, 21, 41).  However, the Court will refrain from rendering a decision on that motion until it has been determined whether Plaintiff has properly served Seawind within thirty days of the attached Order.

1

F.R.C.P. 12(b)(5). (ECF 23, "Seawind Opp'n"). Plaintiff filed its reply and opposition to Seawind's motion to dismiss on May 1, 2017. (ECF 24, "Pl. Reply").

Plaintiff subsequently filed a request for default against Seawind on April 12, 2017, which the clerk of court entered that same day.[3] The default was entered based upon the affidavit of Plaintiff's counsel in this case, Philip M. Giordano (ECF 20-1, "Giordano Aff."), which stated, in pertinent part,

(1) On December 16, 2016, a bailiff engaged by Plaintiff's Jamaican counsel "served the Summons and Complaint upon an individual identified as Eyon Minto ["Minto"], Security Coordinator of Defendant Seawind, in Jamaica and who has been designated by Jamaican law to accept service of process upon the Defendant." (Giordano Aff. ¶ 3)

(2) On February 22, 2017, a bailiff engaged by Plaintiff's Jamaican counsel "served the Summons and First Amended Complaint upon an individual identified as Ian McKell[ar] ["McKellar"], Assistant Security Manager of Defendant Seawind, in Jamaica and who has been designated by Jamaican law to accept service of process upon the Defendant." (Id. ¶ 4)

(3) A document labeled "Proof of Service" was attached to the Affidavit as to both Minto and McKellar, and a box was checked next to the statement

---

[3] It is worth briefly describing the distinction between an entry of default and a default judgment. F.R.C.P. 55 describes a straightforward two-step process for obtaining default judgment. The first step, entry of default pursuant to F.R.C.P. 55(a), "is a ministerial matter performed by the clerk and is a prerequisite to a later default judgment. No motion is needed and no order of court is involved. If the default judgment is properly requested and the claim is for a sum certain, the clerk proceeds to the second step, entry of a default judgment [pursuant to F.R.C.P. 55(b)(2)] for damages and costs. Such situations are rare, however, and in the vast majority of cases, a judicial determination is necessary to decide the extent of the injury or the valuation of the plaintiff's loss. Entry of default and entry of default judgment are thus conceptually and procedurally distinct." Nationwide Prop. & Cas. Ins. Co. v. Janis, 08-CV-00153, 2008 WL 2762375, at *1 (M.D. Pa. July 11, 2008) (internal quotations and citations omitted).

Accordingly, that Plaintiff filed its motion for default judgment, pursuant to F.R.C.P. 55(b)(2), prior to filing a request for default, pursuant to F.R.C.P. 55(a), makes this case procedurally cumbersome. However, because Plaintiff mistakenly prematurely moved for default judgment, we will construe Seawind's response as a motion to lift the default, pursuant to F.R.C.P. 55(c), and also to dismiss the Amended Complaint.

indicating that each was "designated by law to accept service of process on behalf of [Seawind]." (Id., Ex. A & B).

(4) Seawind had "failed to file responsive papers to the Plaintiff's pleadings and . . . such time has expired for the same." (Id. ¶ 6).

Notwithstanding this representation to the clerk of court, for the following reasons, the Court finds that Plaintiff did not properly serve Seawind. Therefore, the entry of default is void. See Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985) (The entry of default "when there has been no proper service of the complaint is, *a fortiori* void, and should be set aside."); see also Grant Entm't Group, Ltd. v. Star Media Sales, 988 F.2d 476, 493 (3d Cir. 1993) (holding that a default will be set aside if it was not properly entered). The Court will not, at this time, additionally grant Seawind's motion to dismiss the Amended Complaint for improper service, pursuant to F.R.C.P. 12(b)(5), since "there exists a reasonable prospect that service may yet be obtained." Sampath v. Concurrent Techs. Corp, 227 F.R.D. 399, 401 (W.D. Pa. Apr. 20, 2005)

## II. Seawind Was Not Properly Served

The Court first analyzes whether Plaintiff has satisfied its burden of proof with respect to the validity of service, and concludes that it has not. See Grand Entm't Group, 988 F.2d at 493 ("[T]he party asserting the validity of service bears the burden of proof on that issue.").

### a. Compliance with the Contract

The parties initially dispute whether Section 18.3 of the Contract displaces the requirements of F.R.C.P. 4, which typically governs service of process. Section 18.3 of the Contract explicitly provides that, in the event of litigation between the parties,

> "[s]**ervice of any legal proceedings** concerning or arising out of this Agreement **shall be effected by causing the same to be delivered to the statutory agent or company secretary of the party to be served at its registered office**, or at such other address as may from time to time be notified in writing by the party

3

concerned. Until further notice, the respective addresses for the parties shall be as first set forth above."

(ECF 1, Complaint, Ex. E, Section 18.3) (emphasis added).

Seawind argues that where, as here, the parties to a contract expressly agree on a manner of service, the contract controls. (Seawind Opp'n at 8). Accordingly, Seawind argues, service was improper here because Plaintiff failed to comply with Section 18.3 of the Contract. Plaintiff does not meaningfully dispute that it did not serve Seawind in accordance with the provision of the Contract, (see Pl. Mot. at 8-9), but rather argues that Section 18.3 of the Contract does not necessarily displace the operation of F.R.C.P. 4. (Id. at 9).

As Seawind points out, there is some support in this Circuit for the proposition that a contractual provision designating a method of service trumps F.R.C.P. 4. See, e.g., Aviation Exch. Corp. v. Nightclub Mgmt. & Dec., LLC, 08-cv-533, 2009 WL 605397, at *2 (D. Del. Mar. 10, 2009) ("conformity to Rule 4 is not required where the defendant agrees to an alternative method of service"). However, the Court need not decide this issue as a matter of law at this time, since, as discussed infra, Plaintiff has failed to comply with *either* the Contract *or* with F.R.C.P. 4.

As to the Contract, the record is clear that neither Minto nor McKellar was a "statutory agent" or "company secretary" for Seawind. (See ECF 23, Ex. A, Declaration of Emilio Huhn, "Huhn Decl." ¶¶ 8, 13). In fact, Seawind's corporate records indicated that Michael Andrew McMorris—the signatory to the Contract—is the "company secretary." (See Seawind Opp'n, Ex. B-2).

The record is equally clear that "Lot 13, Rosemount, Montego Bay, Saint James, Jamaica" ("Lot 13")—the property at which Plaintiff purportedly served Seawind—is not Seawind's "registered office." According to the uncontroverted evidence in the record, Seawind

4

does not even "own, lease, use or otherwise conduct any operations," at Lot 13, let alone use it as its "registered office." (Huhn Decl. ¶ 14). According to its corporate records, Seawind's "registered office" is located at "Lot A59 Freeport, Montego Bay, St. James" ("Lot A59"). (Id.). Seawind concedes that "10 A Chelsea Avenue Kingston, JAMAICA," the address listed on page one of the Contract as Seawind's place of business, may have alternatively been an appropriate location at which to effect service. (Seawind Opp'n at 9-10). There is no evidence, however, that Plaintiff did serve or attempted to serve Seawind at either of these locations.

Accordingly, the Court finds that Plaintiff failed to properly serve Seawind pursuant to the terms of the Contract.

### b. Compliance with F.R.C.P. 4

Seawind alternatively argues, and the Court finds, that even if F.R.C.P. 4 governs the provision of service in this case, Plaintiff has failed to demonstrate that it served Seawind in satisfaction of that rule.

Pursuant to F.R.C.P. 4(h)(2), service of a corporation outside of the United States shall be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." F.R.C.P. 4(f) provides for service, in pertinent part,

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .

   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.

Jamaica is not a signatory to the Hague Convention.[4]  Accordingly, "there is no internationally agreed means within the language of 4(f)(2)."  Id.  Service may therefore be made as appropriate under Rule 4(f)(2)(A), and this Court must determine if service was properly effected such that it satisfied Jamaican law.  See e.g., ISPEC, Inc. v. Tex R.L. Indus., Inc., No. CIV. 12-4339, 2014 WL 4162858, at *5 (D.N.J. Aug. 20, 2014) (holding that, under Rule 4(h)(2), effectiveness of service depends on requirements of Taiwanese law).

Under Jamaican law, service of process is governed by the Jamaican Civil Procedure Rules ("Jamaican Rules"), which provide, in relevant part,

**Rule 5.7: Service on limited company**

Service on a limited company may be effected—

(a) by sending the claim form by telex, FAX, prepaid post, courier delivery or cable addressed **to the registered office of the company**;

(b) by **leaving the claim form at the registered office of the company**;

(c) by serving the claim form personally **on any director, officer, receiver, receiver-manager or liquidator of the company**;

(d) by serving the claim form personally **on an officer or manager of the company** at any place of business of the company which has a real connection with the claim; or

(e) in any other way allowed by an enactment.

(See ECF 23, Ex. C1, Declaration of D. Benjamin Thomas ("Thomas Decl."), ¶ 49) (emphasis added).  Seawind argues that Plaintiff failed to comply with any of the acceptable methods of service detailed in Rule 5.7.[5]

---

[4]   See Serving Papers, U.S. Embassy in Jamaica, http://jm.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/notaries-public/serving-papers/ (last visited June 12, 2017)

[5]   Plaintiff points out that Jamaican Rule 5.16 also allows for—but does not require—service to be effected through a contractually agreed upon.  (See Thomas Decl. ¶ 53 ("Service of a claim form by contractually agreed method.")).  Accordingly, Plaintiff's failure to comply with

First, for the reasons stated supra, II.A, Seawind correctly argues that Plaintiff did not "send the claim form to" or "leave the claim form at" Seawind's "registered office," Lot A59, in satisfaction of Rule 5.5(a) or (b). (Seawind Opp'n at 12-13; Jamaican Rule 5.7(a)-(b)).[6]

Second, Seawind also correctly argues that Plaintiff did not serve the Amended Complaint personally on "any director, officer, receiver, receiver-manager or liquidator" of Seawind or on any "officer or manager" of Seawind, in satisfaction of Rule 5.5(c) or (d). (Seawind Opp'n at 12-13). Minto and McKellar—the only two individuals who were served in this case—are not, by their own sworn statements, "officer[s] or manager[s]" of Seawind. (See ECF 27, Ex. C ¶ 5; Ex. D ¶ 5). This statement was reiterated by Mr. Huhn, the manager of Seawind's Resorts, who declared that both Minto and McKellar are "mid-level employees at the Resorts" and that "neither of them are officers or managers[.]" (Huhn Decl. ¶ 8).

Seawind has submitted the Declaration of Emile Leiba (ECF 23, Ex. B "Leiba Decl."), Seawind's retained local Jamaican counsel, who declares that, "[b]ased on Mr. Huhn's description of Mr. Minto and Mr. McKell[ar]'s job responsibilities at Seawind, it appears that Jamaican courts would hold that service of the summons and complaint on Mr. Minto, and service of the summons and amended complaint on Mr. McKell[ar], does not constitute service on Seawind as Messers. Minto and McKell[ar] do not exercise supervisory control which reflects the general policy of the company, nor do they exercise any control over areas of general administration of the company." (Leiba Decl. ¶¶ 8-10 (citing Huhn Decl. ¶¶ 5, 6)).

Plaintiff rebuts these assertions only with the Declaration of Kereene Smith (ECF 24-12, "Smith Decl."), Plaintiff's Jamaican counsel, who states, without substantiation, that

---

Section 18.3 of the Contract, explained supra, does not foreclose its ability to otherwise demonstrate compliance with the Jamaican Rules.

[6] Plaintiff seems to rest entirely on subsection (b) of the Jamaican Rule as its basis for contending that service was proper effected. (Pl. Mot. at 8).

7

"[a]ccording to my understanding, information and belief, the service of process . . . is, and was, proper service of process upon Seawind in accordance with the law and rules of Jamaica which permits service on a limited company by leaving the relevant documents being served at the registered address of the company." (Id. ¶¶ 7, 11). Plaintiff does not, however, submit any evidence to show either that Minto and McKellar were authorized to accept service on Seawind's behalf or that Seawind was served at its "registered office." Accordingly, in light of the other specific evidence, the Court must conclude that Smith's conclusory averment is insufficient to satisfy Plaintiff's burden of proof. (See Leiba Decl. ¶ 11).

Accordingly, Plaintiff has also failed to show it effected service in compliance with the Jamaican Rules, and, by extension, F.R.C.P. 4.[7]

### III. Legal Consequence of Failure to Serve

Having established that Plaintiff failed to properly serve Seawind, the Court must next determine what the legal consequence of that failure will be; namely, whether it should (1) deny Plaintiff's motion for default judgment, void the entry of default, and allow Plaintiff additional time to serve Seawind, or (2) grant Seawind's motion to dismiss the Amended Complaint, pursuant to F.R.C.P. 12(b)(5).

District courts possess "broad discretion" when evaluating a motion to dismiss for insufficient service of process. Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). Where a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action. See Charles A. Wright et al., 5B Fed. Prac. & Proc. Civ. § 1354 (3d ed.).

---

[7] Seawind also highlights ways in which Plaintiff failed to comply with Jamaican Rule 5.5—which details the required components of a proof of service affidavit—none of which Plaintiff disputes. (See Seawind Opp'n at 13-14; Leiba Decl. ¶¶ 19-20; Huhn Decl. ¶ 9). However, the Court need not detail any additional ways in which Plaintiff failed to satisfy Jamaican service requirements, nor detail the deficiencies in the proof of service affidavit, since the Court is already satisfied that Plaintiff failed to properly effect service in the first place.

Rather, courts will elect to quash service and grant plaintiff additional time to properly serve the defendant. Id.; see also Sampath v. Concurrent Techs. Corp, 227 F.R.D. 399, 401 (W.D. Pa. Apr. 20, 2005) ("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should at most, quash service, leaving the plaintiff [ ] free to effect proper service.") (internal citation and quotation marks omitted).

As stated above, Plaintiff had in its possession at least one appropriate address at which to serve Seawind, as the first page of the Contract indicated that Seawind's officers were located at "10 A Chelsea Avenue Kingston, Jamaica." Moreover, as Seawind points out, Plaintiff had, prior to the commencement of this action, sent bills to Seawind at Lot A59. (Compl., Ex. L, at 1; Ex. M, at 1).

More troublingly, since the clerk of court's entry of default, Plaintiff has made certain representations to the Supreme Court of Jamaica (where Seawind has filed a declaratory judgment against Plaintiff) overstating the significance of that procedure.[8] For instance, Plaintiff has requested that the Jamaican action be stayed on the basis that (1) "[Plaintiff] has recently obtained an *Entry of Default* against the Claimant in the Pennsylvania Proceedings which is anticipated to include an award of damages to be assessed"; (2) "[Plaintiff] will be able to enforce said Default in [Jamaica] by virtue of the *Judgment (Foreign) (Reciprocal Enforcement) Act*"; and (3) "[t]he existence of the Pennsylvania *Entry of Default* renders [the Jamaican action] nugatory as this Judgment in effect acknowledges that the relevant contract between the parties is

---

[8] See supra, I at 2 n.3.

at an end and [Seawind] is now indebted to [Plaintiff] in damages for breach of contract." (ECF 44, Ex. 3 at 1).

These representations by Plaintiff—which are not accurate, because the Court did not grant Plaintiff's motion for default judgment—are troubling. One might infer that Plaintiff intended to use the Jamaican court's unfamiliarity with the intricacies of F.R.C.P. 55 to its strategic advantage in the Jamaican action. That inference would be supported by the fact that Plaintiff also told the Jamaican court that, in light of the entry of default, "it is unnecessary for [the Jamaican court] to undergo a trial in order to" determine whether Seawind "owe[s] [Plaintiff] any money arising from non-renewal of the contract." (ECF 44, Ex. 4 at 2).

Despite the Court's suspicion, however, the Court will not conclude at this time that Plaintiff acted in bad faith. For one, because Plaintiff filed its motion for default judgment before its request for an entry of default, it is at least possible that Plaintiff's representations to the Jamaican court were a product of genuine confusion about the distinction between the two rather than a bad faith attempt to confuse that court. (See ECF 18, 20). Moreover, as stated above, courts are reluctant to dismiss an action where there is a possibility of proper service because dismissal "needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits." Fed. Prac. & Proc. Civ. § 1354. Accordingly, the Court will grant Plaintiff thirty (30) days to effectuate proper service, rendering moot Seawind's motion to dismiss the Amended Complaint under F.R.C.P. 12(b)(5). To the extent that service continues to be defective, Seawind is free to renew its motion to dismiss pursuant to F.R.C.P. 12(b)(5) if necessary.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment is DENIED. Seawind's motion to lift the default is GRANTED, and motion to dismiss the Amended Complaint, pursuant to F.R.C.P. 12(b)(5), is DENIED, without prejudice, as moot.

Plaintiff will be granted thirty (30) days to serve Seawind. The Court will hold under advisement (1) Seawind's motion to dismiss the Amended Complaint for lack of personal jurisdiction and (2) AMR's motion to dismiss the Amended Complaint.

One issue which remains is AMR's reliance on the doctrine of *forum non conveniens* because of the action pending in Jamaica. This Court believes that it may be very relevant to this issue to have additional information as to the adequacy, promptness and fairness of the proceeding in Jamaica, which in many respects are parallel to the proceeding in this Court. The Court will allow thirty (30) days for the parties to supplement the record of this case on this issue.

O:\Jessica.2016\16-cv-5575, Copia v. AMResorts & Seawind\Memo Re Motion to Lift Default.docx