**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| COPIA COMMUNICATIONS, LLC,<br><br>v.<br><br>AMRESORTS, L.P., et al. | CIVIL ACTION<br><br>NO. 16-5575 |
|---|---|

**MEMORANDUM RE: DEFENDANTS' MOTIONS TO DISMISS**

Baylson, J.                                                                    September 8, 2017

## I.      Introduction

Plaintiff Copia Communications, LLC ("Plaintiff"), a Massachusetts limited liability company, brings this action against defendants AM Resorts, L.P., a Pennsylvania limited partnership ("AMR"), and Seawind Key Investments Limited, a Jamaican company ("Seawind," and collectively, "Defendants"), for alleged breach of contract and associated torts[1] arising out of an agreement between Plaintiff and Seawind for the provision of internet services by Plaintiff (the "Contract") at two of Seawind's Jamaican hotels, Secrets St. James Montego Bay and Secrets Wild Orchid Montego Bay (the "Resorts").  (See ECF 11, Amended Complaint, "Compl.").

Both Defendants contend that this dispute should not be litigated in the Eastern District of Pennsylvania, but for different reasons.

On March 3, 2017, AMR moved to dismiss the Amended Complaint:

(1) under the common law doctrine of *forum non conveniens*,

(2) on the basis of international comity, and

---

[1] In the Amended Complaint, Plaintiff alleges (1) breach of the covenant of good faith and fair dealing, (2) promissory estoppel/detrimental reliance, (3) unjust enrichment, (4) fraud and deceit, (5) negligent misrepresentation, (6) accounting, and (7) civil conspiracy.  (Compl. ¶ 1 (b)-(h)).

(3) for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).
(ECF 13, "AMR Mot.").

Plaintiff filed its Opposition on April 3, 2017 (ECF 18, "Pl. AMR Opp'n), to which AMR filed a Reply on April 17, 2017 (ECF 21, "AMR Reply").  On June 20, 2017 (ECF 46), the Court issued an Order stating that this motion would be held under advisement, allowing the parties an opportunity to supplement the record regarding the status of a declaratory action brought by Seawind against Plaintiff in Jamaica, where it is currently pending.

On August 8, 2017, Seawind moved, for a second time,[2] to dismiss the Amended Complaint for lack of personal jurisdiction (F.R.C.P. 12(b)(2)), insufficient process (F.R.C.P. 12(b)(4)), and insufficient service of process (F.R.C.P. 12(b)(5)).  (ECF 53, "Seawind Mot."). Plaintiff filed its Opposition on August 22, 2017 (ECF 55, "Pl. Seawind Opp'n"), and Seawind filed its Reply on August 29, 2017 (ECF 56, "Seawind Reply").

For the reasons stated below, Defendants' motions will be GRANTED.

## II.    Factual Background and Procedural History

The following facts are drawn from the Complaint and the parties' factual submissions. Because these motions concern jurisdictional issues, the Court may consult facts beyond those alleged in the Complaint.  See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdictional actually lies."); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 258-9 (1981)

---

[2]    On June 20, 2017, the Court concluded that Plaintiff had failed to properly serve Seawind, and ordered that Plaintiff would have 30 days to effect proper service.  (ECF 45, 46). Because the Court found that there was improper service, the Court lifted its entry of default as to Seawind, and denied the Plaintiff's motion for default judgment.  (Id.).  The Court denied Seawind's motion to dismiss for improper service of process, pursuant to F.R.C.P. 12(b)(5), as moot, instead allowing Plaintiff 30 days to serve Seawind.  (Id.).

(motions to dismiss based on *forum non conveniens* should be resolved based on affidavits submitted by the parties).

### i. Corporate Structure

A corporation known as the Apple Leisure Group, headquartered in Pennsylvania, is the parent company and common owner of AMR and AM Management Jamaica Resorts Limited ("AM Jamaica"), a Jamaican company. (AMR Mot., Ex. A, Declaration of Dennis Keleshain, "Keleshian Decl.," ¶¶ 3, 7). AMR and AM Jamaica are therefore two of many affiliated companies within Apple Leisure Group, and each provide brand licensing, hotel management and assistance services to all-inclusive hotels located in the Caribbean and Central America. (Id.).

AM Jamaica—but not AMR—did at one point enter into a hotel management agreement with Seawind, to provide management assistance services for the Resorts. (Id. ¶ 6, 9).

Additionally, in June 2009, Seawind—but not AMR—entered into the Contract with Plaintiff for the provision of internet service at the Resorts, which is the bread and butter of Plaintiff's business. (Compl. ¶ 17).

There is no similar contract between AMR and Seawind. (Keleshian Decl. ¶ 9).

### ii. Allegations in the Complaint

Plaintiff, by and through its manager Darryl Wehmeyer ("Wehmeyer"), began negotiating the Contract with Seawind in April 2009. Plaintiff alleges that Wehmeyer engaged in negotiations with three individuals in particular: Pedro Morell ("Morell"), Manuel Carbajo ("Carbajo"), and Manuel Garcia ("Garcia"). (Compl. ¶ 11). Plaintiff alleges that "Morell and Carbajo are, or were during the relevant time, employees of [AMR], and Garcia is, or was during the relevant time, an employee of Seawind." (Id.).

Plaintiff alleges that as negotiations progressed, including through email exchanges between Morell and Wehmeyer, "it was clear to [Plaintiff] that [AMR] was the decision-maker for itself and for Seawind, as an alter ego of [AMR], in the negotiation process for the [C]ontract with [Plaintiff]," and that AMR had "sufficient authority to bind both Defendants and to enter into the contract with [Plaintiff]." (Id. ¶¶ 13-14).[3]

The Contract between Seawind and Plaintiff was executed on June 29, 2009 at Seawind's office in Jamaica.[4] (Id. ¶ 17; see ECF 11, Ex. E, the "Contract"). It is undisputed that Wehmeyer, on behalf of Plaintiff, and Michael McMorris, Managing Director of Seawind, were the only signatories on the Contract. (Contract at 11).

Plaintiff alleges that, on August 25, 2009, it "received payment under the Contract from [AMR]," (id. ¶ 25), and that, between 2010 and 2014, all obligations under the Contract were "performed in a workmanlike manner." (Id. ¶ 28). Performance of the Contract took place entirely in Jamaica.

Plaintiff alleges that Defendants violated the Contract when, on April 28, 2014, Emilio Huhn ("Huhn")—who Plaintiff alleges was "an employee of [AMR]"—informed Plaintiff that it had decided to terminate the Contract with Plaintiff as of May 1, 2014, in violation of notice requirements and other provisions of the Contract. (Id. ¶ 29; Compl., Ex. J.).

---

[3]     Plaintiff supports its alleged understanding with Exhibits attached to the Complaint, including (1) an email from Morell to Wehmeyer stating "[a]s soon as we address these points we can go ahead and sign the agreement" (Compl., Ex. C); and (2) an email from Morell to Wehmeyer stating that he had "given [Garcia] [Wehmeyer's] telephone number so you can meet to discuss installation issues" but to "[p]lease bear in mind that any advice given regarding installation is non binding till the agreement is signed." (Id.).
[4]     Discussion of the substantive terms of the Contract is not relevant for resolution of the instant motions, but is described in detail in the Massachusetts action, see Copia Commc'ns, LLC v. AMResorts, L.P., No. 14-cv-13056-LTS, 2015 WL 7621480, at *1 (D. Mass. Feb. 5, 2015), aff'd, 812 F.3d 1 (1st Cir. 2016) (hereinafter, "Copia I").

### iii.  Procedural History

#### 1.  *Massachusetts Action*

As Defendants point out throughout the briefing, Plaintiff does not bring the claims in the instant Complaint here for the first time.  Rather, Plaintiff sued Defendants in the District of Massachusetts on July 18, 2014, asserting almost identical claims.  On February 5, 2015, the district court dismissed that complaint for lack of personal jurisdiction with respect to both Defendants, holding that their contacts with Massachusetts failed to establish specific jurisdiction.[5]  Specifically, the court stated that (1) "the contract was not 'formalized and entered into' in Massachusetts[;]" (2) "the parties did not contemplate future consequences within Massachusetts[;]" (3) the contract did not subject Defendants to 'substantial control and ongoing connection to' Massachusetts[;]" and (4) "Copia's claims do not arise out of any marketing efforts Defendants made in Massachusetts," and "to the extent that [AMR] maintains a website or conducts advertising which could reach Massachusetts, such efforts do not give rise to Copia's claims."  Copia I, 2015 WL 7621480, at *5.  The First Circuit "easily affirm[d]" the district court.  Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 2 (1st Cir. 2016) (hereinafter, "Copia II").

#### 2.  *Jamaica Action*

On July 17, 2015, Seawind filed a declaratory judgment action against Plaintiff in the Supreme Court of Jamaica—Jamaica's trial court—seeking a declaration that the Contract was

---

[5]     To support the exercise of personal jurisdiction in Copia I, Plaintiff pointed to "(1) the payment checks with Copia's Massachusetts address, (2) the telephone calls and emails Wehmeyer received on occasion while he was in Massachusetts, (3) the contract clause indicating that notice be given to Copia in Massachusetts, (4) the equipment that was shipped from Massachusetts to Jamaica, and (5) Defendants' marketing efforts in Massachusetts." Copia, 2015 WL 7621480, at *5

not breached, but rather "was properly terminated . . . by letter dated April 25th 2014 indicating a non-renewal of the Agreement by the Claimant," and that the contract "did not automatically renew." (ECF13-3 at 28, "Claim Form"). Plaintiff did not respond to that complaint until after the First Circuit affirmed the dismissal of <u>Copia I</u> in August 2016.

This Court initially deferred resolution of Seawind's motion to dismiss in part to allow the parties to submit additional information regarding the Jamaican action. (<u>See</u> ECF 46).

On June 9, 2017, Seawind submitted a letter to the Court regarding the Jamaican action, namely that the action was pending in the Commercial Division of the Supreme Court of Judicature of Jamaica, Claim Number 2015 CD 00099, and that while the parties will not learn the name of the judge presiding over the case until one week before a trial or hearing, it will be one of four judges. Seawind noted that it "understand[s] that proceedings before the Commercial Division are typically completed within one year[.]" Seawind also provided a list of relevant events in the Jamaican action.

Seawind submitted an additional letter on June 28, 2017, informing the Court that trial is set in the Jamaican action for October 23-26, 2017. (ECF 49 at 2).

### III. Discussion

#### A. Seawind's Motion to Dismiss (ECF 53)

Seawind moves to dismiss the Amended Complaint for both insufficient process and improper service of process, and for lack of personal jurisdiction. Plaintiff, as the party asserting the validity of service of process, bears the burden of proof on that issue, <u>see</u> <u>Sims v. City of Philadelphia</u>, 552 Fed. App'x 175, 177 (3d Cir. 2014), as well as on the issue of whether the Court may exercise general or specific jurisdiction over Seawind, <u>Allaham v. Naddaf</u>, 13-cv-

3564, 2015 WL 3421464, at *2 (E.D. Pa. May 28, 2015), aff'd, 635 Fed. App'x 32 (3d Cir. 2015).

### i. Insufficient Process (F.R.C.P. 12(b)(4))[6]

Seawind argues that, despite the Court offering Plaintiff a chance to properly serve Seawind, the documents Plaintiff served on Seawind on July 18 and 19, 2017 are not true and correct copies of the operative Amended Complaint, in that they contain undisclosed revisions, and do not include true and correct copies of all exhibits attached to the Amended Complaint, namely Exhibits H through M. (Seawind Mot. at 6).

Plaintiff's Opposition boils down to a request that the Court excuse any failure of process because, *inter alia*, (1) Seawind has been on notice of this litigation for many months (Pl. Opp'n at 2); (2) Plaintiff has made "good faith" attempts to and has properly served process on Seawind (id. at 12-13 (citing Pl. Seawind Opp'n, Exhs. A & B, Affidavits of Service)); (3) Plaintiff satisfied service requirements under Jamaican law, and by extension, F.R.C.P. 4(f)(2) (id. at 10); and (4) Seawind has not shown "actual prejudice" arising from any lack of process by Plaintiff (id. at 6). Plaintiff additionally argues that "good cause" exists such that it should have an opportunity to correct deficiencies (id. at 15-16), or, alternatively, that the Court should permit Plaintiff to serve Seawind by publication in a Jamaican newspaper. (Id. at 16-17).

---

[6] While Seawind moves pursuant to both 12(b)(4) (insufficient process) and 12(b)(5) (insufficient service of process), Seawind concedes in its Reply memorandum that it is not challenging the manner or method of service by Plaintiff, but rather the form of the process. (See Seawind Reply at 7); see also 5A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1353 at 276–277 (1990) (explaining the frequent confusion of 12(b)(4) motions with 12(b)(5) motions). Therefore, the Court will treat Seawind's motion as having been made pursuant to 12(b)(4), which pertains to the appropriate defense. (See Seawind Mot. at 16 n.9 (citing White v. SKF Aerospace, Inc., 768 F. Supp. 498, 499 n.1 (E.D. Pa 1991)).

The Court agrees with Seawind that Plaintiff's insufficient process is inexcusable, notwithstanding the fact that Seawind had notice of the litigation. See Carter v. Keystone, No. 05-CV-311, 2007 WL 956430, at *1-2 (D. Del. Mar. 29, 2007) (dismissing claim when pro se plaintiff was offered "additional time and another opportunity" to comply with Rule 4(c) and failed to do so), aff'd, 278 Fed. App'x 141, 142 (3d Cir. 2008) (per curiam) ("Carter was given two opportunities to properly effect service of process . . . Carter, however, failed to comply with the requirements of Rule 4 on either occasion. Therefore, we see no error in the Magistrate Judge's order granting Marmon Keystone's motion under Rules 12(b)(4) and (5).")

The Court has already been lenient with Plaintiff regarding service (see ECF 45, 46), and Plaintiff has made no showing that good cause exists to excuse the present defect, which is not, as Plaintiff contends, a mere "error" that "may have been made in the transmittal of the copy" of the Amended Complaint (Pl. Opp'n at 16). As the portion of the served document pasted into Seawind's Motion (at page 17) shows, the served documents included newly inserted language into certain paragraphs of the purported Amended Complaint.

Accordingly, F.R.C.P. 12(b)(4) is one basis for this Court's dismissal of Plaintiff's Amended Complaint as to Seawind.

### ii. Personal Jurisdiction (F.R.C.P. 12(b)(2))

Seawind argues that Plaintiff's Amended Complaint should also be dismissed because Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Seawind. "Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel, Ltd., 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute provides that a court may exercise

personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States[.]" 42 Pa. Cons.Stat. Ann. § 5322(b).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8–9 (1984).

### 1. Specific Jurisdiction

The Pennsylvania long-arm statute—which is coextensive with the constitutional limits on a courts' exercise of personal jurisdiction—permits the exercise of personal jurisdiction whenever (1) the defendant purposefully directed its activities at Pennsylvania, (2) the pending lawsuit arises from or relates to the Pennsylvania activities, and (3) the exercise of jurisdiction is reasonable. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircrat Ltd., 556 F.3d 94, 102 (3d Cir. 2009); accord O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (applying traditional, three-part test under Pennsylvania law).

Seawind argues that Plaintiff has failed to show that Seawind's activities in Pennsylvania permit this Court to exercise jurisdiction over Seawind. In support, Seawind primarily relies on Judge Sorokin's analysis in Copia I, 2015 WL 7621480, which was affirmed by the First Circuit, Copia II, 812 F.3d at 5-6. There, Judge Sorokin applied the Massachusetts long-arm statute (which, like Pennsylvania's, is coextensive with the constitutional limit), and concluded that personal jurisdiction could not be exercised over Seawind or AMR,[7] as Plaintiff had failed to satisfy each prong of the test.[8]

---

[7]    It is undisputed that this Court, by contrast, can exercise general jurisdiction over AMR since AMR is headquartered in Pennsylvania.

[8]    There, unlike here, Plaintiff pointed to five specific activities directed at Massachusetts to support the exercise of specific jurisdiction, namely: "1) the payment checks with Copia's Massachusetts address, 2) the telephone calls and emails Wehmeyer received on occasion while he was in Massachusetts, 3) the contract clause indicating that notice be given to Copia in

Specifically, as to "relatedness," Judge Sorokin explained that Plaintiff's claims did not arise out of any activities with Massachusetts because (1) the Contract was entered into in Jamaica, not Massachusetts; (2) as "*all* of Plaintiff's performance occurred in Jamaica," the parties did not contemplate future consequences within Massachusetts in their prior negotiations, their course of dealing, or through the terms of the contract; (3) the Contract did not subject Seawind to control or ongoing connection to Massachusetts; and (4) "[t]here is no evidence in the record that Seawind markets or advertises in Massachusetts," and even if they did, Plaintiff's claims do not arise out of any marketing efforts by Seawind or AMR. Copia I, at *5-6.

As to "purposeful availment," Judge Sorokin found that none of the limited contacts Defendant had with Massachusetts–"payments addressed to, and potentially mailed to Massachusetts, or the possibility that Wehmeyer might read emails or receive phone calls [in Massachusetts]"—constitutes purposeful availment of the privilege of conducting business in Massachusetts. He explained that Defendants had no reason to believe that their relationship with Plaintiffs amounted to purposeful availment of the protections of Massachusetts, "most clearly" because the terms of the Contract themselves "call for its interpretation and governance to be in accordance with Jamaican law, not Massachusetts law." Id., at *7.

As for "reasonableness," Judge Sorokin thoroughly explained that Massachusetts had "little or no interest in adjudicating a dispute concerning a contract negotiated in Jamaica, executed in Jamaica, calling for performance in Jamaica, requiring the application of Jamaican law, and where virtually the entire course of conduct occurred in Jamaica. The Plaintiff can obtain convenient and effective relief in Jamaica—all the parties are subject to jurisdiction there

---

Massachusetts, 4) the equipment that was shipped from Massachusetts to Jamaica, and 5) Defendants' marketing efforts in Massachusetts." Copia I, at *5.

and Plaintiff itself recognizes the possibility of suit there by signing the contract with a provision providing for Jamaican jurisdiction." Id.

While Plaintiff perfunctorily argues that Seawind has sufficient contacts with this Court to support specific jurisdiction, its arguments are conclusory, and Plaintiff fails to point to any specific actions by Seawind to purposefully avail itself of the laws of Pennsylvania. (See, e.g., ECF 24 at 19 ("Seawind has purposefully directed its activities to this instant forum—namely, by and through its business dealings with AM Resorts, its alter ego."). In fact, Seawind did not have even the minor contact with Pennsylvania that Defendants had with Massachusetts. Accordingly, the Court finds that Judge Sorokin's carefully reasoned jurisdiction analysis in Copia I applies here (to Seawind) with equal, if not even greater, force.

### 2. General Jurisdiction based on "Alter Ego" Theory

Plaintiff's alternative argument in support of this Court's exercise of personal jurisdiction over Seawind is that Seawind and AMR are "alter egos" of each other, such that the general jurisdiction the Court may exercise over AMR may be imputed to Seawind. This argument also falls flat.

"A subsidiary will be considered the alter-ego of its parent only if the parent exercises control over the activities of the subsidiary." Directory Dividends, Inc. v. SBC Communications, Inc., Civ. A. No. 01–CV–1974, 2003 WL 21961448, at *3 (E.D. Pa. July 2, 2003) (quoting Clemens v. Gerber Scientific, Inc., Civ. A. No. 87–5949, 1989 WL 3480, at * 1 (E.D. Pa. Jan. 13, 1989)). More precisely, a plaintiff must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent. Arch v. Am. Tobacco Co., 984 F. Supp. 830, 837 (E.D. Pa. 1997) (citation omitted).

First, Plaintiff presumes that the alter ego theory is applicable here, ignoring the fact that it is most readily applied in the context of parent/subsidiary relationships between entities. Even assuming that Plaintiffs intended, by pursuing this theory of persona jurisdiction, to assert that AMR is the "parent" and Seawind the "subsidiary," courts seldom apply the alter ego theory in reverse; namely, where, as here, a plaintiff urges that a parent's presence in a forum should be imputed to a subsidiary. See Thomas Glob. Grp. L.L.C. v. Watkins, No. 13-cv-4864, 2016 WL 3946774, at *3 (D.N.J. July 19, 2016). Notwithstanding these ailments, the Court's research reveals that in some instances the alter ego theory may apply in the context of other sorts of corporate arrangements, so long as their their operations and management are sufficiently interconnected. See, e.g., Hunt v. Glob. Incentive & Meeting Mgmt., No. CIV.A.09-4921 JBS, 2010 WL 3740808, at *9 (D.N.J. Sept. 20, 2010). Accordingly, the Court will apply the alter ego test applicable in this Circuit to the relationship between Seawind and AMR. However, Plaintiff has failed to make the necessary showing.

Preliminarily, as illustrated by the following chart, Plaintiff contends, relying exclusively on Wehmeyer's declaration, that it negotiated the Contract (that was ultimately executed between Plaintiff and Seawind) with AMR employees. Seawind counters these allegations with several declarations which, in their totality, establish that Wehmeyer's subjective belief was mistaken, and that all alleged AMR employees were actually AM Jamaica employees. AM Jamaica is a foreign affiliate of AMR, and fellow company within the Apple Leisure Group, but is a distinct entity from AMR. As Seawind points out, Plaintiff does not allege that Seawind is the alter ego of AM Jamaica.

| Employee | Employer (according to Seawind) | Employer (according to Plaintiff) |
|---|---|---|
| **Pedro Morell** | Never worked for AMR; worked for one of their | "[A]t the time of our meeting, Morell and Carbajo represented to |

| | foreign affiliates (Keleshian Decl., ECF 27, Ex. A ¶ 3) | me that they were employees of [AMR] and had authority to negotiate a contract with Copia on behalf of Seawind." (Wehmeyer Decl. ¶ 5)<br><br>Morell included the link to AMR's website in his email signature. (Id.) |
|---|---|---|
| **Manuel Carbajo** | Never worked for AMR; worked for one of their foreign affiliates (Keleshian Decl. ¶ 3) | "[A]t the time of our meeting, Morell and Carbajo represented to me that they were employees of [AMR] and had authority to negotiate a contract with Copia on behalf of Seawind." (Id.)<br><br>Carbajo's email address was mcabajo@amresorts.com (Id. ¶ 6). |
| **Javier Estelrich** | Never worked for AMR, but for one of its foreign affiliates (Keleshian Decl. ¶ 3). | Copied on emails throughout negotiations and used email address jestelrich@amresorts.com (Id. ¶ 6). |
| **Emilio Huhn** | Never worked for AMR, but for one of its foreign affiliates (Keleshian Decl. ¶ 3).<br><br>Worked for an AMR affiliate until 2010 (ECF 23-4), and then became working for Seawind in 2010 (Id.) | "[Huhn] had indicated to me that he was employed by [AMR.]" (Id. ¶ 20).<br><br>He terminated the contract by letter, on Seawind letterhead. (Id. ¶ 25) |
| **Baldemar Romo** | Never worked for AMR, but for one of its foreign affiliates (Keleshian Decl. ¶ 4). | "[Romo] was an [AMR] employee." (Id. ¶ 21). |
| **Kirk Baugh** | Never worked for AMR, but for one of its foreign affiliates (Keleshian Decl. ¶ 4). | "[O]n-site IT manager" at Resorts; copied on emails at address systems.sesmb@secretsresorts.com. (Id. ¶ 21). |

As Seawind contends, Plaintiff does not even argue that the given foreign affiliate—with whose employees Wehmeyer actually negotiated—is the alter ego of Seawind, so it is "miles

away" from successfully arguing that AMR is the alter ago of Seawind.  (ECF 23-2 at 8; <u>see also</u> Seawind Mot. at 14).

Moreover, even if Plaintiff could successfully show that AMR had been involved in, or had authority to bind, Seawind in this particular Contract, that would do little to help Plaintiff show that Seawind and AMR were "alter egos," which requires a level of pervasive, day-to-day control by one entity over another that cannot be shown based on the negotiation of a single contract.  <u>Bell v. Fairmont Raffles Hotel Int'l</u>, No. 12-cv-757, 2013 WL 6175717, at *3 (W.D. Pa. Nov. 25, 2013) ("[T]he alter-ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.").  Courts in this Circuit evaluating the proper application of the alter ego doctrine consider whether:

(1) the parent owns all or a significant majority of the subsidiary's stock;

(2) commonality of officers or directors exists between the two corporations,

(3) the group possesses a unified marketing image, including common branding of products,

(4) corporate insignias, trademarks, and logos are uniform across corporate boundaries,

(5) group members share employees,

(6) the parent has integrated its sales and distribution systems with those of its subsidiaries,

(7) the corporations exchange or share managerial or supervisory personnel,

(8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation,

(9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and

(10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 569–70 (citing Simeone, 360 F. Supp. 2d at 675); accord Genesis Bio–Pharms. v. Chiron Corp., 27 Fed. App'x. 94, 98 (3d Cir. 2002).

Plaintiff fails to establish facts to satisfy any of the factors under this test. Plaintiff does not even attempt to provide facts relevant to factor (1) (stock ownership); factor (6) (integrated sales/distribution), or factor (9) (using subsidiary as a marketing division). Additionally, Plaintiff's proffered evidence regarding the other factors fails to show that AMR had the requisite control over Seawind such that it can be deemed its alter ego. As to factor (2), none of Seawind's officers or directors are also officers or directors of AMR. (See ECF 27-1, Huhn Decl. ¶ 8(c)). As to factor (3), the marketing material for Seawind's resorts focuses on the name of the Resorts, which are managed by AM Jamaica, rather than Seawind or AMR independently. As to factor (4), the record shows that corporate insignias are not uniform across corporate boundaries, as Seawind uses its own corporate insignia/logos for formal communications, not AMR's. (Id. at 9; Compl., Ex. J). As to factor (5), while Plaintiff mistakenly contends that AMR employees were involved in negotiating the Contract, discussed *supra*, there is no allegation that those employees were also Seawind employees. As to factor (7), there is no evidence that AMR and Seawind share managerial or supervisory personnel. Huhn is the only even potentially "shared" employee, and, as the declarations make clear, he is, at most, not shared between Seawind and AMR, but rather between Seawind and AMR's affiliate, AM Jamaica. (ECF 27-1, Huhn Decl. ¶ 1). As to factor (8), there is no evidence that Seawind performs business functions that would ordinarily be handled by AMR. The evidence shows that only Seawind employees were involved in the final negotiations of the Contract, and Seawind—not AMR—executed the Contract with Plaintiff, (ECF 10-3, Ex. F), and that only Seawind could approve decisions or

contractual changes.  (ECF 10-4, Ex. H).  As to factor (10), even if there was control exercised by AMR's affiliate in the context of this Contract, it is not the type of day-to-day dominion that is required to show that they were alter egos (factor 10).  (ECF 27-1, Huhn Decl. ¶ 8(a)-(h); ECF 27-1, McMorris Decl. ¶ 4).

Based on this record, there is clearly no "alter ego" relationship between AMR and Seawind, and this Court's general jurisdiction over AMR cannot be attributed to Seawind.

Accordingly, Seawind's motion to dismiss will also be granted for lack of personal jurisdiction.

### B.  AMR's Motion to Dismiss

As stated above, AMR moves to dismiss the Complaint on the basis of (1) *forum non conveniens*, (2) international comity, or (3) for failure to state a claim upon which relief can be granted.

### i.  Forum Non Conveniens

Under the common law doctrine of *forum non conveniens,* a district court has the discretion to dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007).  "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notable the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'"  Sinochem Int'l Co., 549 U.S. at 429 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996)).  "The analysis under a motion to dismiss for *forum non conveniens* is flexible and must be made on the unique facts of each case."  Mediterranean Golf, Inc. v. Hirsh, 783 F. Supp. 835, 840 (D.N.J. 1991) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50 (1981)).  Courts often decide the issue of *forum non*

*conveniens* based only on affidavits submitted by the parties; "extensive investigation" is unnecessary and would "defeat the purpose" of such a motion. See Piper Aircraft Co., 454 U.S. at 258. The decision to dismiss a case on the grounds of *forum non conveniens* rests in the sound discretion of the trial court. Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 188-89 (3d Cir. 2008).

The Third Circuit applies a three-part analysis in determining if dismissal based on the doctrine of *forum non conveniens* is appropriate. First, a district court must "determine whether an adequate alternative forum can entertain the case." Windt, 529 F.3d at 189-90. Second, "[i]f such a forum exists, the district court must then determine the appropriate amount of deference [to] be given to the plaintiff's choice of forum." Id. at 190. Third, "[o]nce the district court has determined the amount of deference due [to] the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors." Id.

"If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds." Id.; see also Chigurupati v. Daiichi Sankyo Co., 480 Fed. App'x 672, 674 (3d Cir. 2012).

The party moving to dismiss on grounds of *forum non conveniens* "bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." Lony v. E.I. Du Point De Nemours Co., 886 F.2d 628, 632 (3d Cir. 1989) (citing Lacey v. Cessna Aircraft Co., 862 F. 2d 38, 43 (3d Cir. 1988)). Then, plaintiff has the opportunity to rebut the evidence presented by the defendant in support of the motion to dismiss. Chigurupati, 480 F. App'x at 674 n.4.

*1. Adequate Alternative Forum*

The first step in a *forum non conveniens* analysis is to determine whether an adequate alternative forum exists. A party to the lawsuit can satisfy this element of the *forum non conveniens* analysis "when the defendant is amenable to process" in the alternative forum. Piper Aircraft Co., 454 U.S. at 254 n.22 (internal quotation marks omitted). A forum may be deemed an inadequate alternative under the "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory." Id. For example, a forum is inadequate where the alternative forum does not permit litigation of the subject matter of the dispute, or [w]here a plaintiff cannot access evidence essential to prove a claim. See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 n.14 (3d Cir. 2010). If the proposed alternative forum is inadequate, it would be improper to dismiss the case for *forum non conveniens*. See Piper Aircraft Co., 454 U.S. at 254 n. 22.

AMR argues that Jamaican courts are an adequate alternative forum, and the Court agrees. ARM and Seawind are both "amenable to process" in Jamaica. In fact, adjudication of disputes arising out of the Contract was clearly contemplated since the Contract provides that Plaintiff and Seawind submit to the non-exclusive jurisdiction of Jamaican courts.

Additionally, there is no basis on which to conclude that Jamaica "does not permit litigation of the subject matter in dispute." Seawind has advised the Court that this case is currently pending before the Commercial Division, and is set for trial next month. (ECF 49). Accordingly to an affidavit submitted by a Jamaican lawyer, Mary-Angela Robertson (ECF 13-3, Ex. F "Robertson Aff"), the Commercial Division is a "specialized commercial court that allows for even speedier resolution of disputes of this nature." (Id. ¶ 19). She also stated that Jamaican courts "frequently hear contract disputes between business entities," and can offer relief and remedies for the claims set forth in the Amended Complaint. (Id. ¶¶ 6, 8-12)

ARM also points the Court to several district courts that have concluded that Jamaica is an adequate alternative forum for purposes of the forum non conveniens calculus." (ECF 13 at 10). For instance, in <u>Guimond v. Wyndham Hotels & Resorts</u>, No. 95-cv-0428, 1996 WL 281959, at *2-3 (S.D.N.Y. May 29, 1996), the court found that Jamaica was an adequate alternative forum because (1) the defendant, a Jamaican hotel, was amenable to process there; and (2) the plaintiff did not contend that the remedies available in a Jamaican court were "inferior" to those amenable in the district court. Similarly, in <u>Muraco v. Sandals Resorts Int'l</u>, No. 14-cv-4896, 2015 WL 9462103, at *8 (E.D.N.Y. Dec. 28, 2015), the court noted that "several courts have found that St. Lucia and other similar forums whose legal systems are the product of British law"—like Jamaica's— are adequate alternative forums.

Plaintiff proffers several arguments regarding the inadequacy of Jamaica as an alternative forum, all of which the Court finds unavailing.

First, Plaintiff argues that Jamaican courts are inadequate because they will not afford Plaintiff its Seventh Amendment right to a jury trial. (ECF 19 at 18-19). However, "the adequacy of an alternative forum does not require the causes of action, procedures, or remedies that are available to be identical to those in the United States." <u>Wenzel v. Marriott Int'l, Inc.</u>, No. 13-cv-8335 AT, 2014 WL 6603414, at *5 (S.D.N.Y. Nov. 17, 2014), <u>aff'd</u>, 629 F. App'x 122 (2d Cir. 2015); <u>see</u> <u>Doe v. Ritz Carlton Hotel Co., LLC</u>, No. CA 14-4423, 2015 WL 221106, at *5 (E.D. Pa. Jan. 14, 2015), <u>aff'd</u>, 666 Fed. App'x 180 (3d Cir. 2016) (dismissing complaint on *forum non conveniens* grounds even though "there is no right to a jury trial under Caymanian law").

Second, Plaintiff argues that Jamaican courts are not an adequate forum because AMR is not a party to the action—brought by Seawind—that is currently pending against Plaintiff. (ECF

19 at 18-19). This argument is misguided, since the relevant question as to the adequacy of an alternative forum is not whether a given defendant is party to a *contemporaneous* action in the alternative forum, but rather whether the foreign forum, here Jamaica, *could* exercise jurisdiction over AMR. Here, there is no dispute that Jamaican has jurisdiction over both Defendants. (Robertson Aff. ¶ 20; <u>see</u> AMR Reply, ECF 21 at 8 ("There is no dispute that Jamaican courts have jurisdiction to decide breach of contract claims regarding contract disputes arising from Jamaican hotels.")).

Last, Plaintiff contends that Jamaica is an improper forum because Plaintiff will not be entitled to the same extent of discovery in Jamaica as it is in a United States court. (ECF 19 at 20). For one, Plaintiff offers no evidence or testimony to support this contention. In fact, Plaintiff's contention is belied by Robertson's Affidavit, which states that "[m]ost of the witnesses and documents relevant to a determination of this matter are located in Jamaica," and "non-party witnesses, who reside in Jamaica, cannot be compelled to attend trial in the United States." (Robertson Aff. ¶¶ 22, 26). Even if Plaintiff substantiated the claim, the law in this Circuit is clear that different discovery procedures—without more—is insufficient to render a foreign forum inadequate. <u>See, e.g.</u>, <u>Eurofins Pharma US Holdings v. BioAlliance Pharma SA</u>, 623 F.3d 147, 160 (3d Cir. 2010) (holding that lack of right to depositions did not render France an inadequate forum); <u>Auxer v. Alcoa, Inc.</u>, 406 Fed. App'x 600, 603 (3d Cir. 2011) (holding same regarding Australia).

Accordingly, the Court finds that Jamaican courts constitute an adequate alternative forum for this dispute, and AMR has met its burden with respect to this factor of the *forum non conveniens* test.

### 2. *Deference to Plaintiff's Choice of Forum*

Next, if an adequate alternative forum exists, "the district court must then determine the appropriate amount of deference to be given [to] the plaintiff's choice of forum." Windt, 529 F.3d at 190. A court is generally required to give a plaintiff's choice of forum significant deference. Piper, 454 U.S. at 255. This presumption in favor of plaintiff's choice of forum is particularly strong when the plaintiff is a United States citizen. Colantonio v. Hilton Int'l Co., No. 03–1833, 2004 WL 1810291, at *2 (E.D.Pa. Aug.13, 2004) (citing Piper, 454 U.S. at 255–56 n. 23). Nonetheless, the Supreme Court has noted:

> [a] citizen's choice of forum should not be given dispositive weight, however. Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of convenience suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

Piper, 454 U.S. at 255–56 n. 23 (internal citations omitted). Additionally, "courts within this District and elsewhere have held that where the operative facts giving rise to the action occur outside of the forum selected by the plaintiff, the deference given to plaintiff's choice of forum is somewhat reduced." Ritz Carlton, 2015 WL 221106, at *2 (collecting cases).

AMR argues that, in this instance, Plaintiff's choice of forum should be given little weight, even though it is AMR's home forum, "given Plaintiff's blatant forum shopping in first bringing suit in Massachusetts, then later bringing suit in Pennsylvania (and only after a dismissal on the merits by the District Court in Massachusetts)[.]" (ECF 19 at 9 n.7). Plaintiff argues, by contrast, that its choice of forum is entitled to a high level of deference because Plaintiff is a domestic company, and because its chosen forum is convenient due to its proximity to AMR's headquarters. (ECF 19 at 16-17).

While Plaintiff is technically domestic, as <u>Piper</u> makes clear, even a domestic plaintiff's choice of forum is not entitled to "dispositive weight," particularly where the facts giving rise to the action occurred outside the forum selected. <u>Piper</u>, 454 U.S. at 255; <u>see</u> <u>Ritz</u>, 2015 WL 221106, at *3 (finding the plaintiff's choice of forum entitled to "diminished" deference even though plaintiff had chosen his home forum because "almost all of the operative facts giving rise to plaintiffs' claims occurred outside this forum, in the Cayman islands."). Here, all of the events giving rise to the action arose in Jamaica, not Pennsylvania. As best expressed in Judge Sorokin's opinion in <u>Copia I</u>, "both parties signed the [C]ontract in Jamaica"; "Copia made a proposal to Defendants in Jamaica and the parties negotiated in Jamaica"; and "[p]erformance [under the Contract] took place entirely in Jamaica." <u>Copia</u>, 2015 WL 7621480, at *1.

Moreover, the Court is not persuaded that Plaintiff chose this forum based on its convenience, notwithstanding the fact that it is in close proximity to AMR's headquarters. As the Second Circuit explained in <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 74 (2d Cir. 2003), and the Third Circuit has cited with approval (<u>see</u> <u>Kisano Trade & Invest. Ltd. v. Lemster</u>, 737 F.3d 869, 875 (3d Cir. 2013),

> The plaintiff's choice of the defendant's home forum provides a much less reliable proxy for convenience. Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy. Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum

Here, it is clear that Plaintiff chose this forum not because of any "*bona fide* connection" to it, but rather because it (1) already tried and failed litigating this dispute in Massachusetts, (2) wants to avoid litigating this dispute in Jamaica; and (3) hoped that because this forum had general jurisdiction over AMR, it would be attributed to Seawind.

Accordingly, Plaintiff's choice here "was made for reasons of trial strategy," and is therefore entitled to relatively little deference.

### 3. Balancing of the Private and Public Interest Factors

The third and final step of a *forum non conveniens* analysis requires the district court to balance the private interest factors, which affect the convenience of the parties, and the public interest factors, which affect the convenience of the forum. Windt, 529 F.3d at 189-90. Balancing these factors is "essentially qualitative, not quantitative." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 182 (3d Cir. 1991). The defendant has the burden of proof. Piper Aircraft Co., 454 U.S. at 241. The private interest factors include:

(1) "the relative ease of access to sources of proof";
(2) "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses";
(3) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; and
(4) "the enforceability of a judgment if one is obtained."

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-9 (1947). When analyzing these private interest factors, the Supreme Court held that "the district court must scrutinize the substance of the dispute . . . to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988) (quoting Gilbert, 330 U.S. at 509). The district court's application of the *forum non conveniens* analysis, however, "does not call for a detailed development of the entire case," but only "a brief

review of the issues necessary to determine who the critical witnesses are." Mediterranean Golf,

Inc., 783 F. Supp. at 843 (internal quotation marks omitted).

A district court must also consider public interest factors, which include:

(1) "the administrative difficulties flowing from court congestion";
(2) "the local interest in having localized controversies decided at home";
(3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action";
(4) "the avoidance of unnecessary problems and conflicts of laws or the application of foreign law"; and
(5) "the unfairness of burdening citizens in an unrelated forum with jury duty."

Gilbert, 330 U.S. at 508 (internal quotation marks omitted). "If the balance of these factors

indicates that trial in the chosen forum would result in oppression or vexation to the defendant

out of all proportion to the plaintiff's convenience, the district court may, in its discretion,

dismiss the case on *forum non conveniens* grounds." Windt, 529 F.3d at 190.

Here, the private interest factors weight in favor of litigating this dispute in Jamaica. As

AMR argues, (1) "almost all of the relevant witnesses are located in Jamaica,[9] the "vast majority

---

[9]     AMR supports these arguments with various affidavits, including:
(1) Affidavit of Emilio Huhn (ECF 13-3, Ex. B, "Huhn Aff." ¶¶ 2-7), manager of the Resorts, who stated that (a) he "reside[s] and work[s] in Jamaica," (b) "[t]he Assistant Manager of the Resorts, Derek Meany, also resides and works in Jamaica[,]" (c) "Wehmeyer maintained a Jamaican cell phone and . . . maintained a personal residence in Jamaica and traveled to Jamaica frequently," (d) "[Plaintiff] maintained numerous employees in Jamaica who either were citizens of Jamaica and/or resided in Jamaica," and (e) that he is "not aware that [Plaintiff] had any employees, other than Wehmeyer, who lived in the United States."
(2) Affidavit of Michael McMorris (ECF 13-3, Ex. C-2, "McMorris Aff." ¶¶ 16-17), who signed the Contract on behalf of Seawind, lives in Jamaica, and attests that (a) "[a]ll in-person meetings between myself and Mr. Wehmeyer conducted during the negotiation of the Contract occurred in Jamaica[,]" (b) "[t]hroughout the negotiation of the Contract, I understood that: [i] all work under the Contract would be performed in Jamaica, [ii] all ongoing service and maintenance would be performed in Jamaica, and [iii] [Plaintiff] would provide on-site service employees at the Resorts."
(3) Affidavit of Salvador Luque Garcia (ECF 13-3, Ex. C-3, "Garcia Aff." ¶¶ 16-17), Chairman of Seawind, stated that all relevant employees, meetings, and negotiations occurred in Jamaica.

of the relevant documents and evidence are located in Jamaica,"[10] including Plaintiff's documents and witnesses, (3) "the negotiation, execution, performance, and the alleged improper termination of the Contract occurred in Jamaica,"[11] and (4) this Court lacks personal jurisdiction over Seawind, so allowing the claim to continue would force defendants to litigate "two actions, which involve a common nucleus of operative facts, in two fora." (ECF 13 at 20 (citing Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 162 (3d Cir. 2010)).

Plaintiff offers no evidence with which to dispute AMR's contentions, and merely reiterates its argument that Pennsylvania is a more convenient forum because of its proximity to AMR's headquarters, and conclusorily asserts that given "[b]oth the Plaintiff and Defendant are citizens of the United States . . . it logically follows that most of the witnesses, discovery and evidence will also be located in the United States." (ECF 19 at 21). While Plaintiff tries to distinguish itself from Ritz, 2015 WL 221106, at *4—where the court found that the plaintiff's frequent trips to the Cayman Islands counseled against crediting the alleged burden of litigating there—the Court cannot credit Plaintiff's assertion that "it would [be] a substantial financial burden for it to appear and litigate in Jamaica," given that (1) Plaintiff holds itself out as a company founded specifically to do business in Jamaica, (2) Wehmeyer spends substantial amounts of time in Jamaica, and (3) Plaintiff is already simultaneously litigating a dispute there.

---

[10]　See Huhn Aff. ¶ 15 ("Relevant Resorts documents associated with the relationship with Copia, including documents associated with the Contract negotiations and/or Contract execution, are maintained on-site at the Resorts[.]").

[11]　See Huhn Aff. ¶ 8 ("Throughout the performance of the Contract, all ongoing service and maintenance was [to] be performed at the Resorts in Jamaica"); id. ¶ 9 ("Throughout its performance of the Contract, several Copia employees were available on-site at the Resorts daily to assist with maintenance or performance issues"); id. ¶ 13 ("[A]t no point during the performance of the Contract did any employees, agents, or representatives of the Resorts travel to Pennsylvania.")

The Court reaches the same conclusion with respect to the public interest factors. The parties have strong ties to Jamaica, not Pennsylvania, and a jury of Pennsylvania citizens, having no interest in having Plaintiff's claims tried here, should not be burdened with serving on a jury to resolve this dispute. See Copia I, 2015 WL 7621480, at *7 ("Massachusetts has little or no interest in adjudicating a dispute concerning a contract negotiated in Jamaica, executed in Jamaica, calling for performance in Jamaica, requiring the application of Jamaican law, and where virtually the entire course of conduct occurred in Jamaica").

Based on the evidence before the Court, AMR has presented sufficient evidence to show that the public interest factors weigh in favor of a Jamaican forum, and they are not outweighed by any private interest in litigating the case here.

For all of the foregoing reasons, AMR's motion to dismiss based on the doctrine of *forum non conveniens* will be GRANTED.

### i. International Comity

The Court will also dismiss the Amended Complaint based on principles of international comity, which allows courts to exercise its discretion to dismiss when a "parallel" action is pending in a foreign forum. See All. Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc., 13-cv-2510, 2014 WL 958957, at *5 (E.D. Pa. Mar. 12, 2014). "A proceeding is parallel when there is a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'" Id. at *6 (alteration in original) (quoting Lexington Ins. Co. v. Forrest, 263 F. Supp. 2d 986, 1002-03 n.13 (E.D. Pa. 2003)).

Here, the declaratory action filed against Plaintiff in Jamaica, which is scheduled for trial next month, is a "parallel" proceeding. Seawind seeks a declaratory judgment that it is not liable to Plaintiff for breach of contract and that it does not owe Plaintiff fees for equipment of

installation, to which Plaintiff has filed responsive pleadings. (See Claim Form). These factual issues overlap entirely with those detailed in the Amended Complaint. While Plaintiff here asserts additional causes of action in the Amended Complaint, they all rise and fall on the viability of the underlying contractual claim, and would be subsumed within the breach of contract claim under the familiar "gist of the action" and "economic loss" doctrine. See generally, Simon v. First Liberty Ins. Corp., No. 16-cv-4540, 2016 WL 7048955, at *3 (E.D. Pa. Dec. 5, 2016).

Accordingly, the Court also grants AMR's motion to dismiss based on principles of international comity. The Court therefore need not reach AMR's alternative basis for dismissal, whether Plaintiff has failed to state a claim on which relief can be granted,

## IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss will be GRANTED. An appropriate Order follows.

O:\Jessica.2016\16-cv-5575, Copia v. AMResorts & Seawind\Memo Re Motions to Dismiss.docx